**ORIGINAL**

| | |
|---|---|
| 1 | DEREK F. FORAN (CA SBN 224569) |
|   | *DForan@mofo.com* |
| 2 | KEVIN LOVE HUBBARD (CA SBN 290759) |
|   | *KHubbard@mofo.com* |
| 3 | MORRISON & FOERSTER LLP |
|   | 425 Market Street |
| 4 | San Francisco, California 94105-2482 |
|   | Telephone: 415.268.7000 |
| 5 | Facsimile: 415.268.7522 |
| 6 | KERRYANN HAASE MINTON (*Pro Hac Vice Pending*) |
|   | *khminton@michaelbest.com* |
| 7 | SARAH E. FLOTTE (*Pro Hac Vice Pending*) |
|   | *seflotte@michaelbest.com* |
| 8 | MICHAEL BEST & FRIEDRICH LLP |
|   | Two Prudential Plaza |
| 9 | 180 N. Stetson Ave., Suite 2000 |
|   | Chicago, IL 60601 |
| 10 | Telephone: 312.222.0800 |
|   | Facsimile: 312.222.0818 |
| 11 | |
| 12 | Attorneys for Subpoenaing Party |
|   | MASON AWTRY |

**FILED**

FEB -5 2016

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JCS

MASON AWTRY,

      Subpoenaing Party,

    v.

GLASSDOOR, INC.,

      Subpoenaed Party.

Case No. **CV 16 80 028 MISC**

(Case No. 14-cv-09206 Pending in Northern District of Illinois)

**NOTICE OF MOTION AND MOTION TO ENFORCE COMPLIANCE WITH THIRD PARTY SUBPOENA**

Date: March 16, 2016
Time: 9:30 a.m.
Courtroom:

NOTICE OF MOTION AND MOTION TO ENFORCE COMPLIANCE WITH THIRD PARTY SUBPOENA
CASE NO.

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on March 11, 2016, at 9:30 a.m., or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable _____ of the above-referenced court, located at _____, the Subpoenaing Party, Mason Awtry, will and hereby does move the Court for an order compelling Subpoenaed Party Glassdoor, Inc., to comply with the third party subpoena and request for documents issued by Mr. Awtry.

This motion is based on this Notice of Motion, the supporting Memorandum of Points and Authorities, the accompanying Declaration of Mason Awtry and Declaration of Sarah E. Flotte, Esq., and the exhibits attached thereto, and such other written or oral argument as may be presented at or before the time this motion is taken under submission by the Court.

## STATEMENT OF RELIEF REQUEST

Pursuant to Federal Rule of Civil Procedure 45, Mr. Awtry respectfully requests an order requiring Glassdoor, Inc., to comply with the subpoena served on it in the underlying litigation, Case No. 14-cv-09206, pending in the United States District Court for the Northern District of Illinois.

Dated: February 5, 2016
                                              DEREK F. FORAN
                                              KEVIN LOVE HUBBARD
                                              MORRISON & FOERSTER LLP

                                              By: _____
                                                   DEREK F. FORAN

                                              Attorneys for Subpoenaing Party
                                              MASON AWTRY

## MEMORANDUM OF POINTS AND AUTHORITIES

### STATEMENT OF ISSUE TO BE DECIDED

Whether this Court should enforce Defendant Mason Awtry's subpoena to non-party Glassdoor, Inc., which seeks limited and specific information about the source of anonymous online posts that are critical to Mr. Awtry's defense in the underlying lawsuit, and where Mr. Awtry can satisfy both prongs of the *Highfields* test developed by the Northern District of California and applicable here.

### RELEVANT BACKGROUND FACTS

This motion arises out of a federal lawsuit pending in the Northern District of Illinois. (*See* Second Amended Complaint ("Sec. Amd. Comp."), attached as Exhibit A). The Plaintiffs in the underlying lawsuit are Emily Mackie ("Ms. Mackie"), an interior designer in the Chicago area, and the interior design firm she owns, Inspired Interiors, Inc. ("Inspired Interiors"). (Sec. Amd. Comp., ¶¶ 13-14). Defendant Mason Awtry ("Mr. Awtry") is a Chicago-based business owner and entrepreneur, with whom Ms. Mackie had a romantic relationship and a child. (Sec. Amd. Comp., ¶¶ 15, 17; *see also* Declaration of Mason Awtry ("Awtry Dec."), attached as Exhibit B, ¶ 2).

In the lawsuit, Ms. Mackie alleges that Mr. Awtry defamed her by posting negative comments on her company, Inspired Interiors' website. (Sec. Amd. Comp., ¶¶ 33-37). The alleged defamatory comments include a statement that Ms. Mackie is a liar. (Sec. Amd. Comp. ¶ 35). One of Mr. Awtry's primary defenses to Ms. Mackie's defamation claim is that the alleged statement – that Ms. Mackie is a liar – is true. (Awtry Dec. ¶ 3).

In order to prove that Ms. Mackie is in fact a liar, Mr. Awtry subpoenaed nonparty Glassdoor, Inc. ("Glassdoor") to obtain identifying information regarding the source of negative comments about Mr. Awtry and his business, RightSize Facility, Inc. ("Rightsize"). (*See* Declaration of Sarah Flotte, Esq. ("Flotte Dec"), attached as Exhibit C, ¶¶ 2-3). Glassdoor is a website that allows employees of a company to post anonymous reviews of what it is like to work there. Glassdoor's website advertises that visitors can "Read Reviews from Employees" and "[s]ee what real employees have to say about any company." *See* Glassdoor's website, available

at https://www.glassdoor.com/index.htm.[1]

Based on the timing of the four posts on Glassdoor.com, Mr. Awtry believes Ms. Mackie is their author. (Awtry Dec. ¶ 4). If Mr. Awtry is correct, this evidence will support his defense that Ms. Mackie is a liar. Indeed, Ms. Mackie was never employed by Rightsize and, therefore, posing as an employee would be a lie. As detailed below, each negative post about Mr. Awtry was made on the exact same day as the custody hearings involving Mr. Awtry and Ms. Mackie or a filing in that case. (Awtry Dec. ¶ 5).

The first negative post about Mr. Awtry and his business appeared on March 5, 2015. That morning, a hearing was held in Ms. Mackie and Mr. Awtry's child custody case. (Awtry Dec. ¶ 8). In the March 5, 2015 post, authored by a self-identified "Interior Designer in Chicago, Illinois" who claims to have worked at Rightsize, the author describes Rightsize as "Chaotic."

The second Glassdoor.com post appeared on Wednesday, July 8, 2015. Mr. Awtry always has his son on Wednesday evenings. In addition, a hearing was held in their child custody case on July 8, 2015. (Awtry Dec. ¶ 11). The July 8, 2015 post, authored by a self-identified "Current Employee," described Rightsize as the "Worst Ever." (Awtry Dec. ¶ 12).

The third post appeared on July 20, 2015, the date on which an emergency motion was filed in the child custody case. (Awtry Dec. ¶ 13). The July 20, 2015 post, authored by a self-identified "Former Employee…in Chicago, Illinois," states: "The owner is horrible. He is unprofessional and rude..." (Awtry Dec. ¶ 14).

The fourth Glasdoor.com post appeared on Wednesday, July 22, 2015. Once again, a hearing was held in Ms. Mackie and Mr. Awtry's child custody case and Mr. Awtry has his son that day. (Awtry Dec. ¶ 16). The July 22, 2015 post, authored by a self-identified "Interior Designer in Chicago, Illinois," states that the author worked at Rightsize and that is was the "Worst Company Ever." (Awtry Dec. ¶ 17).

---

[1] *Reese v. Malone*, 747 F.3d 557 (9th Cir. 2014) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.") (citing Fed.R.Evid. 201(b)(2)); *see also Daniels-Hall v. Nat. Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010) (taking judicial notice of information, undisputed by the parties, made available on website).

1  On July 30, 2015, Mr. Awtry subpoenaed Glassdoor to provide information regarding the
2  comments made about Rightsize. (*See* Glassdoor Subpoena ("Glassdoor Sub."), attached as
3  Exhibit 1 to Flotte Dec.). In his Subpoena, Mr. Awtry asked Glassdoor to provide for each posted
4  comment: the Internet Protocol (IP) address associated with the comment, the date the comment
5  was posted, the time the comment was posted, and any and all personally identifying information
6  associated with the IP address(es) identified in Response to No. 1. (Glassdoor Sub.).

7  On August 12, 2015, Glassdoor served on Mr. Awtry its response to the subpoena in
8  which it refused to supply the limited information requested. (*See* Glassdoor's Subpoena
9  Response ("Glassdoor Sub. Resp."), attach as Exhibit 2 to Flotte Dec). In its Response,
10 Glassdoor cited to the First Amendment and the North District of California's *Highfields* decision
11 as a basis for its objections. (Glassdoor Sub. Resp.)

12 On September 24, 2015, Mr. Awtry's counsel spoke with counsel for Glassdoor regarding
13 the subpoena response. (Flotte Dec. ¶ 6). During the call, counsel for Glassdoor explained his
14 client's position and, again, directed Mr. Awtry's counsel to the *Highfield's* decision. (Flotte
15 Dec. ¶ 6). Although productive and in good-faith, the call between counsel could not resolve the
16 dispute. (Flotte Dec. ¶ 6).

17 Accordingly, Mr. Awtry now seeks to enforce the subpoena to Glassdoor in the Northern
18 District of California, which is the district within which production should be made.

19                                    **LEGAL STANDARDS**

20 Under Rule 45(d)(2)(B)(i) of the Federal Rules of Civil Procedure, the proper court for a
21 motion to enforce a subpoena is the "district where compliance [with the subpoenas] is required."
22 *Music Group Maco Commer. Offshore Ltd. v. Does*, 82 F. Supp. 3d 979, 984 (N.D. Cal. 2015).

23 A district court has "wide latitude in controlling discovery and decisions governing
24 discovery are highly fact-intensive." *In re Anonymous Online Speakers*, 661 F.3d at 1176
25 (quoting *White v. City of San Diego*, 605 F.2d 455, 461 (9th Cir. 1979)). In reviewing discovery
26 disputes, a reviewing court applies the highly deferential clear error standard, which is only met
27 when the "reviewing court is left with a 'definite and firm conviction that a mistake has been
28 committed.'" *In Re Anonymous Online Speakers*, 661 F.3d 1168, 1177 (9th Cir. 2011) (quoting

1 | *Cohen v. U.S. Dist. Court*, 586 F.3d 703, 708 (9th Cir. 2009)).

## ARGUMENT

Although the First Amendment protects the right to anonymous speech, the right to anonymity is not absolute. *Music Group*, 82 F. Supp. 3d at 979; *see also Art of Living Found. v. Does 1-10*, No. 10-5022, 2011 U.S. Dist. LEXIS 129836, *3 (N.D. Cal. Nov. 9, 2011) (citing *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342 (1995)). "Where anonymous speech is alleged to be unlawful, the speaker's right to remain anonymous may give way to a [party's] need to discover the speaker's identity ...." *Music Group Macao*, 82 F. Supp. 3d at 983; *see, e.g., In re Anonymous Online Speakers*, 2011 U.S. App. LEXIS 487 (finding no clear error in requiring disclosure of the identity of individuals alleged to have tortiously interfered with plaintiff's contracts by posting anonymous messages on internet blogs); *Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573 (N.D. Cal. 1999) (allowing discovery as to the identity of an anonymous website domain owner alleged to have infringed plaintiff's trademarks); *see also Sony Music Entm't Inc. v. Does 1-40*, 326 F. Supp. 2d 556 (S.D.N.Y. 2004) (cited by Northern District of California in *Art of Living*, 2011 U.S. Dist. LEXIS 129836) (allowing discovery of the identities of individuals alleged to have illegally downloaded plaintiff's musical recordings).

In *In Re Anonymous Online Speakers*, the Ninth Circuit reviewed the variety of tests courts have developed to determine whether an anonymous speaker's identity should be revealed. 661 F.3d at 1174-1177. The court noted that the nature of the speech should be the driving force when choosing the appropriate standard in weighing the level of protection an anonymous online speaker should be afforded. *Id.* at 1977 (discussing differing standards, including that for political speech versus commercial speech).

In cases involving derogatory statements about a company's owner and commercial criticism, such as here, the Northern District of California recently held that the appropriate analysis is set forth in *Highfields Capital Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969 (N.D. Cal. 2005). *See Music Group*, 82 F. Supp. 3d at 983. The court in *Highfields* developed a two-part test, detailed below, to determine whether the identity of an anonymous speaker should be discoverable. While *Highfields* involved a plaintiff's request for identifying information to

pursue its claims against the defendant, as opposed to a defendant's request for identifying information to purse its defense against the plaintiff, its analysis is applicable here. In fact, Glassdoor concedes this point. *See* Glassdoor Resp. (arguing for application of *Highfields*). Because Mr. Awtry can satisfy both prongs under *Highfields*, the subpoena to Glassdoor should be enforced.

A. **The Subpoena To Glassdoor Should Be Enforced Because Mr. Awtry Has A Real Evidentiary Basis For Believing Ms. Mackie Posted The Alleged Comments, Which Would Support Mr. Awtry's Defense To The Pending Claims.**

Under the first prong of the *Highfields* test, a party seeking to discover an anonymous speaker's identity must persuade the court "that there is a real evidentiary basis for believing that the [anonymous speaker] has engaged in wrongful conduct that has caused real harm to the interests of the [party seeking discovery]." *Highfields*, 385 F. Supp. 2d at 975. "It will help to notice that, according to the Ninth Circuit *in Anonymous Online Speakers*, this is a requirement of middling rigor." *Music Group Macao Commer. Offshore Ltd.*, 82 F. Supp. 3d at 984. "More demanding than the 'good faith' or 'motion to dismiss' standard that some courts have used, the *Highfields* 'real evidentiary basis' prong is less demanding than the 'most exacting' test, enunciated in *Doe v. Cahill*, 884 A.2d 451 (Del. 2005), which requires a plaintiff to submit 'sufficient evidence' of each element of its claims 'to survive a hypothetical motion for summary judgment.'" *Id.* citing *Anonymous Online Speakers*, 661 F.3d at 1175-77.

Here, there can be no dispute that Mr. Awtry has a real evidentiary basis for believing Ms. Mackie posted the negative comments about his company on Glassdoor.com. First, Mr. Awtry has produced evidence that each of the four posts were made on the same dates as events in the contentious custody battle between Mr. Awtry and Ms. Mackie, or on a date in which Mr. Awtry had his son. (Awtry Dec. ¶¶ 4-16). In addition, there is evidence that Ms. Mackie is an interior designer and two of the posts were made by a self-identified "interior designer." (Awtry Dec. ¶¶ 9, 17). Mr. Awtry also has produced evidence highlighting the similarities between the alleged defamatory posts by Mr. Awtry in the underlying litigation and the posts on Glassdoor's website, both of which concern the businesses of the respective parties. *Id. Compare Kechara House*

*Buddhist Ass'n Malay. v. Doe*, 2015 U.S. Dist. LEXIS 126124, *11-12 (N.D. Cal. Sept. 18, 2015) (finding that party had not shown a "real evidentiary basis" because – unlike here – it "submit[ed] no evidence whatsoever..." and did not attach any of the materials in issue or sufficient declarations).

There also can be no dispute that Ms. Mackie posting the comments on Glassdoor.com would support Mr. Awtry's defense in the pending litigation. Again, in the current, pending case that Mr. Awtry is defending against in Illinois, he primarily rests his defense to Ms. Mackie's defamation claim on the fact that she is a liar. In Illinois, "[t]ruth is an absolute defense to defamation" claims. *Hnilica v. Rizza Chevrolet*, Inc., 384 Ill. App. 3d 94, 97 (1st Dist. 2008) ("true statements cannot support a claim of defamation"). The fact that Ms. Mackie has posed as an anonymous former employee on Glassdoor and posted negative comments based on her experience working for Rightsize Facility, when she has not actually worked for the company, would support his central defense – that Ms. Mackie is, in fact, a liar.

Based upon the evidence submitted by Mr. Awtry, which establishes the suspicious timing of the posts, the contentious custody battle, and the similarity between the anonymous speaker and Ms. Mackie's allegations in the Illinois lawsuit, Mr. Awtry clearly meets the moderate standard in *Highfields*.

    **B.**    **The Subpoena To Glassdoor Should Be Enforced Because Disclosure Of The Anonymous Speaker Would Cause Relatively Little Harm To First Amendment And Privacy Rights.**

The second part of the *Highfields* test provides that if the party seeking discovery is able to make a sufficient evidentiary showing to satisfy the first component of the test, then the court must balance the harms each party would suffer by a ruling in favor of discovery and a ruling against discovery. 385 F. Supp. 2d at 976. "Balancing under *Highfields* requires the court to 'compare the magnitude of the harms that would be to [each of the party's] competing interests." *Music Group*, 82 F. Supp. 3d 979 (citing *Highfields*, 385 F. Supp. 2d at 976). The court should allow the disclosure if the assessment reveals that enforcing the subpoena would cause relatively little harm to the anonymous speaker's First Amendment and privacy rights while allowing the party seeking discovery to protect against serious wrongs. *Highfields*, 385 F. Supp. 2d at 976.

Here, the motion to enforce should be granted because allowing discovery of the anonymous speaker, if Ms. Mackie, will assist Mr. Awtry in defending against serious allegations of defamation while causing relatively minimal harm to the anonymous speaker's First Amendment and privacy rights. To be sure, if it turns out that Ms. Mackie posted the comments on Glassdoor.com, that means she is a liar because she represented that Rightsize formerly employed her, which is a lie. Thus, Mr. Awtry will be able to assert the defense of truth in response to Ms. Mackie's claim that calling her a liar was defamatory. *See Hnilica*, 384 Ill. App. 3d at 97 ("[t]ruth is an absolute defense to defamation" claims).

Furthermore, disclosure of the requested information would not chill true employees from posting on Glassdoor.com because disclosure would be limited to those situations when there is evidence that the post was fraudulent. *See Art of Living*, 2011 U.S. Dist. LEXIS 129836 at *26-28 (noting "the possibility that disclosure will deter other would-be critics or bloggers from exercising their First Amendment rights" should be considered when weighing the relative harms of each party); *see also Music Group*, 82 F. Supp. 3d at 986 (noting the court is "concerned that breaching the defendant's anonymity for this single remark would unduly chill speech, and 'deter other critics from exercising their First Amendment rights.'"). Here, the possibility that the anonymous online speaker is not actually an employee, and thus not a true critic, negates the likelihood that this would prevent actual employees from posting on Glassdoor.com. Furthermore, disclosure would actually help Glassdoor's reputation as only allowing actual employees to post on their site.

Another factor weighing in favor of disclosure is that users of Glassdoor do not have a heightened expectation of privacy based upon Glassdoor's Privacy and Cookie Policy. As the Policy clearly provides: "[w]e will disclose data if we believe in good faith that such disclosure is necessary to comply with relevant laws or to respond to subpoenas or warrants or legal process served on us." *See* https://www.glassdoor.com/about/privacy-cookies.htm. In the instructive decision of *Doe v. Individuals*, 561 F. Supp. 2d 249, 255 (D. Conn. 2008), the court allowed disclosure of the identity an anonymous post under *Highfields* where – as here – the privacy policy in issue clearly stated that it would reveal personal identifying information to third parties

NOTICE OF MOTION AND MOTION TO ENFORCE COMPLIANCE WITH THIRD PARTY SUBPOENA                     7
CASE NO.

1  in order to comply with court orders or subpoenas.

2      Enforcement also should be granted because the comments in issue are posted in a manner
3  that is not sarcastic, but rather is meant to be a serious review on Mr. Awtry's company and his
4  abilities as a CEO.  In *Highfields*, the court noted that none of the comments in issue there posed
5  any threat to any commercial interest of the plaintiffs because they were so obviously sarcastic
6  and not in any way attributable as coming from the company so as to ruin its reputation. 385 F.
7  Supp. 2d at 981.  However, the court noted that if the comments had been more realistic than the
8  balancing of harms might have weighed in favor of the party seeking discovery. *Id*.  In contrast,
9  another court held that disclosure of the anonymous online speaker was appropriate when the
10 anonymous statements were likely to be taken seriously and to cause harm to the plaintiff's work
11 and reputation, especially since it was the first entry in an Internet search of the plaintiff's name.
12 *Fodor v. Doe*, 2011 U.S. Dist. Lexis 49672 at *13-14 (D. Nev. 2011) (granting third-party
13 discovery in order to identify an anonymous blogger after applying the *Highfields* test). Here, the
14 comments on Glassdoor.com more closely resemble those posted in *Fodor*, especially considering
15 the reviews on the site are the fourth, fifth, sixth, and seventh entries in an Internet search of
16 Rightsize Facility.  Glassdoor specifically describes its company reviews as allowing potential
17 applicants to know "what it's really like to work or interview there according to employees." *See*
18 "About Us", http://www.glassdoor.com/about/index_input.htm.  Thus, unlike the website in
19 *Highfields* that was meant to elicit clearly sarcastic opinion or parody, Glassdoor.com is designed
20 to stimulate accurate reviews that others seriously rely on when choosing a company. Therefore,
21 the negative posts are likely to cause Mr. Awtry and Rightsize Facility serious harm if they are
22 denied discovery on the identity of the anonymous online speaker.

23     Finally, it should also be noted that Mr. Awtry is only seeking discovery of limited
24 Glassdoor.com posts, specifically four out of more than the 8 million company reviews Glassdoor
25 claims to have compiled.  Thus, it is a specific and narrowly tailored request.  He has not sought
26 to cast a wide net in hopes of finding possibly incriminating information, but rather is seeking
27 limited information regarding the negative comments on Rightsize, which he alleges on
28 information and belief are actually Ms. Mackie and not a current or former employee. *See Doe v.*

*Individuals*, 561 F. Supp. 2d at 255 (denying motion to quash subpoena that identifying information sought with specificity).

Accordingly, because the balance of the *Highfields* test weighs in favor of Mr. Awtry, this Court should enforce the subpoena to Glassdoor. Should the Court nevertheless have reservation about disclosure, it could order that the identifying information being sought cannot be shared with anyone other than the parties in this action and their counsel of record. *See Signature Mgmt. Team, LLC v. Automatic, Inc.*, 941 F. Supp. 2d 1145 (N.D. Cal. 2013) (ordering that identifying information "may not be disclosed to anyone other than the parties in this action and their counsel of record without further order of this Court").

## CONCLUSION

As the foregoing demonstrates, Defendant Mason Awtry's subpoena to non-party Glassdoor, Inc. should be enforced.

Dated: February 5, 2016

DEREK F. FORAN
KEVIN LOVE HUBBARD
MORRISON & FOERSTER LLP

By: /s/ Derek F. Foran / KLH
DEREK F. FORAN

Attorneys for Subpoenaing Party
MASON AWTRY

NOTICE OF MOTION AND MOTION TO ENFORCE COMPLIANCE WITH THIRD PARTY SUBPOENA
CASE NO.

9