1
2
3
4

WILLIAM J. FRIMEL (Bar No. 160287)
Seubert French Frimel & Warner LLP
1075 Curtis Street
Menlo Park, CA  94025
Tel: 650.322.3048
Fax: 650.833.2976

5
6

Attorneys for Nonparty
GLASSDOOR, INC.

7

8   **UNITED STATES DISTRICT COURT**

9

10   **NORTHERN DISTRICT OF CALIFORNIA**

11

| MASON AWTRY, | Case No. 3:16-mc-80028-JCS |
|---|---|
| Subpoenaing Party, | (Case No. 14-cv-09206 pending in Northern District of Illinois) |
| v. | |
| GLASSDOOR, INC., | **RESPONDENT GLASSDOOR, INC.'S OPPOSITION TO PETITIONER MASON AWTRY'S MOTION TO ENFORCE COMPLIANCE WITH THIRD-PARTY SUBPOENA** |
| Subpoenaed Party. | |

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

INTRODUCTION .......................................................................................................... 0

STATEMENT OF FACTS ............................................................................................ 3

ARGUMENT ................................................................................................................. 5

I.    THE STRICTER STANDARD FOR EVALUATING SUBPOENAS SEEKING
      THE IDENTITIES OF ANONYMOUS SPEAKERS SET FORTH IN *2THEMART*
      APPLIES ............................................................................................................. 5

      A.    Applying the *Highfields* Test Would Be Inappropriate Because Awtry Has
            No Cause of Action Against the Does ...................................................... 5

      B.    *2TheMart* Sets Forth the Proper Analysis Where a Subpoena Seeks
            Nonparties' Identities ............................................................................... 7

II.   EVEN IF THE *HIGHFIELDS* TEST APPLIES, AWTRY IS NOT ENTITLED TO
      COMPEL DISCLOSURE OF THE REVIEWERS' IDENTITIES ........................ 8

      A.    Even if a Defendant Can Compel Disclosure of a Nonparty's Identity under
            *Highfields*, Awtry Does Not Provide a "Real Evidentiary Basis" to Do So 8

            1.    Even assuming Mackie authored the Reviews, that fact
                  would not support Awtry's purported truth defense ........... 9

            2.    Awtry's evidence that Mackie authored the Reviews is
                  unpersuasive ..................................................................... 10

      B.    Granting Awtry's Motion Would Chill the Reviewers' Exercise of their
            First Amendment Rights, and Awtry Fails to Show that Forcing Glassdoor
            to Disclose the Reviewers' Identities Is Needed to Remedy Serious Wrongs
            ......................................................................................................... 10

            1.    Granting Awtry's motion would have a substantial chilling
                  effect on constitutionally protected speech ...................... 11

            2.    The information sought in Awtry's subpoena is irrelevant to
                  his defense against Mackie's defamation claim ................. 12

            3.    Awtry could have obtained the information he allegedly
                  needs from Mackie or via an internal investigation ........... 13

            4.    Glassdoor's Privacy Policy does not assist Awtry in meeting
                  the *Highfields* standard ...................................................... 14

            5.    The supposed fact that the Reviews are "not sarcastic" is
                  irrelevant, and in any event the Reviews' exaggerated,
                  emotionally charged nature renders them opinion for
                  defamation purposes ........................................................... 15

                  a.    Whether the Reviews are fact or opinion is irrelevant to
                        whether, as Awtry claims, Mackie authored them ............... 15

                  b.    In any event, the Reviews' language would lead a

reasonable reader to view them as opinion ........................ 16

    c.    The Reviews' presence in an anonymous internet forum, and Glassdoor's statements, would lead a reasonable reader to construe them as opinion ............................................... 17

    6.    The Court's ability to enter a protective order preventing public disclosure of the Does' identities is irrelevant to the *Highfields* analysis ............................................................ 19

CONCLUSION .................................................................................................... 19

RESPONDENT GLASSDOOR, INC.'S OPPOSITION TO MOTION TO ENFORCE SUBPOENA

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF AUTHORITIES

**Cases**

*Agora, Inc. v. Axxess, Inc.*, 90 F. Supp. 2d 697 (D. Md. 2000) ...................................... 19

*Art of Living Found. v. Does 1-10*, No. 10-CV-05022, 2011 WL 5444622 (N.D. Cal. Nov. 9, 2011) ................................................................................................................ 6, 7, 12, 14

*Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573 (N.D. Cal. 1999) ........................................ 7

*Cornelius v. DeLuca*, No. 1:10-cv-027, 2011 WL 977054 (D. Idaho Mar. 15, 2011) ................... 8

*Doe I v. Indivs.*, 561 F. Supp. 2d 249 (D. Conn. 2008) ........................................................ 7, 15

*Doe v. 2TheMart.com Inc.*, 140 F. Supp. 2d 1088 (W.D. Wash. 2001)................................ passim

*Enterline v. Pocono Med. Ctr.*, 751 F. Supp. 2d 782 (M.D. Pa. 2008)...................................... 8, 14

*Fodor v. Doe*, No. 3:10-cv-0798, 2011 WL 1629572 (D. Nev. Apr. 27, 2011) .......................... 17

*Global Telemedia Int'l., Inc. v. Doe 1*, 132 F. Supp. 2d 1261 (C.D. Cal. 2001) .......................... 18

*Highfields Capital Mgmt. L.P. v. Doe*, 385 F. Supp. 2d 969 (N.D. Cal. 2005) .................... passim

*In re Anon. Online Speakers,* 661 F.3d 1168 (9th Cir. 2011) ........................................................ 7

*McIntyre v. Ohio Elections Comm'n.*, 514 U.S. 334 (1995)............................................................ 1

*McVicker v. King*, 266 F.R.D. 92 (W.D. Pa. 2010)...................................................................... 14

*Music Group Macao Comm. Offshore Ltd. v. Does*, 82 F. Supp. 3d 979 (N.D. Cal. 2015) ...... 7, 17

*Piping Rock Ptnrs. v. David Lerner Assocs., Inc.*, 946 F. Supp. 2d 957 (N.D. Cal. 2013) ........... 16

*Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489 (S.D.N.Y. 2011) ......................................................................................................................... 10

*Signature Mgmt. Team, LLC v. Automattic, Inc.*, 941 F. Supp. 2d 1145 (N.D. Cal. Apr. 22, 2013) ....................................................................................................................................... 19

*Sony Music Ent'mt. Inc. v. Does 1-40*, 326 F. Supp. 2d 556 (S.D.N.Y. 2004).............................. 7

*SPX Corp. v. Doe*, 253 F. Supp. 2d 974 (N.D. Ohio 2003) ........................................................ 19

*Summit Bank v. Rogers*, 206 Cal. App. 4th 669 (2012) ............................................................... 18

*Xcentric Ventures, LLC v. Arden*, No. C 09-80309, 2010 WL 424444 (N.D. Cal. Jan. 27, 2010) . 3, 13

*ZL Techs., Inc. v. Gartner, Inc.*, 709 F. Supp. 2d 790 (N.D. Cal. 2010)...................................... 18

**Other Authority**

Lidsky, *Silencing John Doe: Defamation & Discourse in Cyberspace*, 49 DUKE L.J. 855 (2000)18

**INTRODUCTION**

Respondent Glassdoor, Inc. ("Glassdoor") operates a website, glassdoor.com, that provides a forum for current and former employees of companies to anonymously voice opinions regarding those businesses.  An employee can express an opinion about an employer on glassdoor.com by posting a "review," in which the employee assigns the employer between one and five stars in a number of categories, and discusses the employer's "pros and cons."  As of the date of Petitioner Mason Awtry's motion in this matter, anonymous users had posted nine reviews of Rightsize Facility Performance, Inc. ("Rightsize"), of which Awtry is the CEO, on glassdoor.com.  The four reviews at issue in this motion (the "Reviews") were posted between March and July 2015, and criticized Rightsize in exaggerated, emotionally charged terms, stating, for instance, that Rightsize is the "Worst Ever," "[t]he owner is horrible" and "[t]hey're digging their own grave."

Awtry is the defendant in a lawsuit filed by Emily Mackie, with whom Awtry "had a romantic relationship and a child," in the United States District Court for the Northern District of Illinois (the "Illinois Action").  Awtry and Mackie are also parties to a separate custody action in Illinois.  Mackie, according to Awtry, asserts a defamation claim in the Illinois Action alleging that Awtry created a website that, among other things, stated that Mackie is "a liar."

Awtry served a subpoena on Glassdoor, demanding that it disclose the identities of all of Rightsize's reviewers on glassdoor.com.  Glassdoor advised Awtry that the information in its possession, including the e-mail addresses supplied by the reviewers, strongly suggests Mackie did not write the Reviews.  Nonetheless, Awtry filed this motion.  Awtry's stated rationale is that he believes Mackie authored the Reviews to gain some sort of advantage in the custody dispute, and, if he can confirm this belief by way of his subpoena, he can defend against Mackie's defamation claim.  This is because, Awtry claims, the authors of the Reviews (the "Does") claim to have been employed by Rightsize, and, since Mackie never worked for Rightsize, her authorship of the Reviews would mean that she is, contrary to her allegations, a liar.

Because "[a]n author's decision to remain anonymous . . . is an aspect of the freedom protected by the First Amendment," *McIntyre v. Ohio Elections Comm'n.*, 514 U.S. 334, 342

(1995), the First Amendment requires civil litigants seeking to compel disclosure of the identities of anonymous speakers to meet certain criteria before they may do so. The test Awtry claims is applicable comes from *Highfields Capital Mgmt. L.P. v. Doe*, 385 F. Supp. 2d 969 (N.D. Cal. 2005) ("*Highfields*"), which held that a plaintiff subpoenaing the identity of an anonymous defendant must show that (1) "there is a real evidentiary basis for believing that the defendant has engaged in wrongful conduct that has caused real harm to the interests of the plaintiff that the laws plaintiff has invoked were intended to protect," *id.* at 975, and (2) "enforcing the subpoena would cause relatively little harm to the defendant's First Amendment and privacy rights and . . . its issuance is necessary to enable plaintiff to protect against or remedy serious wrongs," *id.* at 976. But the *Highfields* test was expressly designed for situations in which a *plaintiff* claims an anonymous "*defendant* has engaged in wrongful conduct," *id.* at 975 (emphasis added) — not for cases where the person whose identity is sought is a *nonparty* to the litigation. Because Awtry asserts no causes of action against the Does, the stricter test set forth in *Doe v. 2TheMart.com Inc.*, 140 F. Supp. 2d 1088 (W.D. Wash. 2001) ("*2TheMart*"), under which "non-party disclosure is only appropriate in the exceptional case where the compelling need for the discovery sought outweighs the First Amendment rights of the anonymous speaker," *id.* at 1095, should apply. In any event, applying either test leads to the same outcome — Awtry is not entitled to learn the Does' identities.

*First*, even if Awtry could adduce evidence showing Mackie authored the Reviews, that would not support his defense against her defamation claim. Mackie's complaint does not simply allege Awtry accused her of being a liar, but in fact says Awtry claimed that Mackie was "professionally dishonest *in her capacity as an interior designer*." (Pet.'s Mot. to Enf. Compliance with Subp., Feb. 5, 2016 ("Mot."), Exh. A, ¶ 174.) Even assuming Mackie made negative comments about Rightsize on glassdoor.com, Awtry does not allege she made those comments in her capacity as an interior designer — he claims that she made them to somehow harm Awtry in the custody battle. Thus, Mackie's alleged authorship of the Reviews is irrelevant to Awtry's truth defense. Moreover, even if it were possible for Awtry to establish a "real evidentiary basis" for his defense against the defamation claim by showing that Mackie wrote the

-1-

1   Reviews, his evidence to that effect is unpersuasive.  Awtry claims the Reviews were posted on

2   the dates of hearings or filings in the custody proceeding, and that two of the Reviews were

3   posted on dates when Awtry "had his son."  But Awtry nowhere claims Mackie actually

4   attempted to use the Reviews as evidence in the custody case, and it is unclear how Mackie could

5   have done so or how the Reviews would have benefited her.  Thus, Awtry's case for Mackie's

6   authorship of the Reviews rests on mere conjecture.

7          *Second*, Awtry cannot meet the second requirement, set forth in *Highfields*, that the

8   subpoena's "issuance [be] necessary to enable plaintiff to protect against or remedy serious

9   wrongs."  *Highfields*, 385 F. Supp. 2d at 976.  Awtry's subpoena seeks the identities of all of

10  Rightsize's reviewers on glassdoor.com, but that information is largely irrelevant to whether

11  Mackie authored the Reviews.  Instead, only documents tending to show that *Mackie* wrote the

12  Reviews would bear on that issue.  Thus, the subpoena is not necessary to enable Awtry to defend

13  against Mackie's defamation claim.  *See, e.g., Xcentric Ventures, LLC v. Arden*, No. C 09-80309,

14  2010 WL 424444, *3 (N.D. Cal. Jan. 27, 2010) (limiting subpoena seeking identities of

15  anonymous speakers because "the scope of the subpoena . . . encompasses documents that are not

16  relevant to . . . establishing the true identity of ComplaintsBoard.com").

17         *Third*, Awtry also fails to meet the requirement that the subpoena be "necessary to enable

18  [him] to protect against or remedy serious wrongs" because Awtry apparently failed to use any

19  alternate means, short of subpoenaing Glassdoor, to find out whether Mackie authored the

20  Reviews.  Awtry makes no claim that he served written discovery, or questioned Mackie in a

21  deposition, regarding that issue, or that he conducted an internal investigation at Rightsize to

22  determine who wrote the Reviews.  This also requires the denial of Awtry's motion.  *See*

23  *2TheMart*, 140 F. Supp. 2d at 1097 (quashing subpoena seeking anonymous speakers' identities

24  because defendant "failed to demonstrate that the information it needs to establish its defense is

25  unavailable from any other source").

26         *Fourth*, granting Awtry's motion would have a significant chilling effect on the

27  willingness of Glassdoor's users to candidly express their opinions about their employers, and

28  thus "cause . . . harm to the[ir] . . . First Amendment and privacy rights," *Highfields*, 385 F. Supp.

RESPONDENT GLASSDOOR, INC.'S OPPOSITION TO MOTION TO ENFORCE SUBPOENA

2d at 976. Awtry claims granting his motion would not lead the typical Glassdoor reviewer to fear having their identity disclosed and being sued based on their comments, because granting Awtry's motion would set a precedent for disclosure of reviewers' identities only where "there is evidence that the post is fraudulent." As noted above, Awtry's evidence that Mackie wrote the Reviews, and therefore "fraudulently" claimed to have worked for Rightsize, is unconvincing. In any event, a Glassdoor reviewer authoring a post has no way of knowing whether, later on, a litigant like Awtry may claim that the post was written by their litigation adversary, and thus that the reviewer's identity must be disclosed. Hence, granting Awtry's motion would give Glassdoor's users every reason to fear that their anonymity will be compromised.

*Finally*, Awtry claims disclosing the Does' identities would not significantly impact their First Amendment rights, because (1) Glassdoor's privacy policy supposedly states that it will disclose reviewers' identities in response to subpoenas, and (2) a reasonable reader would take the Reviews' negative commentary about Rightsize as fact, rather than opinion, for defamation purposes. In fact, Glassdoor's privacy policy specifies that "[o]ur general procedure with respect to civil subpoenas requesting user data is to require a court order, binding on Glassdoor, before we release such information" (Decl. of Thomas O'Brien, Mar. 4, 2016 ("O'Brien Decl."), Exh. B) — indicating that Glassdoor will make every effort *not* to disclose its users' identities. As to whether the Reviews are fact or opinion, that issue is irrelevant to whether Awtry is entitled to learn who the Does are, as Awtry makes no claim that the Does defamed him. But even if it is relevant, (1) the hyperbolic, informal language of the Reviews, (2) their presence in an anonymous, internet-based forum, and (3) Glassdoor's disclaimer of responsibility for reviews on its site, would lead a reasonable reader to take the Reviews as non-actionable opinion.

## STATEMENT OF FACTS

Glassdoor operates glassdoor.com, which provides a forum for current and former employees of companies to anonymously voice opinions regarding those businesses. (O'Brien Decl. ¶ 2.) An employee can express an opinion about an employer on glassdoor.com by posting a "review," in which the employee assigns the employer between one and five stars in a number of categories, and discusses the employer's "pros and cons." (*Id.*) Glassdoor does not compose

or edit the reviews posted on its site.  (*Id.*)  Glassdoor makes explicit to users that reviews on its site are "posted anonymously by employees and job seekers" (*id.* Exh. C), and "assume[s] no responsibility for unintended, objectionable, inaccurate, misleading, or unlawful Content" on the site (*id.* Exh. D).

According to Awtry, he and Mackie "had a romantic relationship and a child," and are currently parties to litigation concerning custody of that child.  (Mot. at 1-2.)  On November 17, 2014, separately from the custody case, Mackie filed the Illinois Action, alleging, *inter alia*, that Awtry defamed her by creating a website on which he stated that Mackie is "professionally dishonest in her capacity as an interior designer" and "lacks professional integrity in her employment."  (Frimel Decl. Exh. A, ¶¶ 153, 155.)

As of the date of Awtry's motion, nine reviews of Rightsize, of which Awtry is the CEO, had been posted on glassdoor.com by anonymous individuals.  (O'Brien Decl. Exh. A.)  The reviews on which Awtry's motion focuses, which were posted between March and July 2015, use hyperbolic, informal language to express the authors' opinions about Rightsize, stating that (1) Rightsize is "Chaotic," and "everyone [is] running around the office like a chicken with its head cut off"; (2) the company is the "Worst Ever" and run by "[t]wo brothers that [sic] think they rule the earth"; (3) "[t]he owner is horrible" and "[h]ow he's stayed in business this long is beyond me"; and (4) Rightsize is the "Worst Company Ever," and "[t]hey're digging their own grave." (*Id.* at 3-4.)  Awtry alleges that, "[b]ased on the timing of the four posts on Glassdoor.com, Mr. Awtry believes Ms. Mackie is their author."  (Mot. at 2.)  This is because (1) "each negative post . . . was made on the exact same day as the custody hearings involving Mr. Awtry and Ms. Mackie or a filing in that case," (2) two of the reviews were posted on a Wednesday, and "Mr. Awtry always has his son on Wednesday evenings," and (3) two of the posts were authored by a "self-identified 'interior designer.'"  (*Id.*)

Awtry served a subpoena on Glassdoor on July 29, 2015, demanding that Glassdoor produce, *inter alia*, "[f]or each posted comment" "about Rightsize . . . on Glassdoor.com," "[a]ny and all personally identifying information associated" with such comments.  (Decl. of Sarah E. Flotte, Feb. 5, 2016 ("Flotte Decl."), Exh. 1, at 4.)  Glassdoor objected on the grounds that,

1   among other things, the right of Rightsize's reviewers to speak anonymously prohibited Awtry

2   from compelling disclosure of their identities.  (*Id.* Exh. 2, at 3.)

3        In meet and confer discussions, Glassdoor advised Awtry that the information in its

4   possession strongly suggests Mackie did not author the Reviews.  (Frimel Decl. Exh. B.)

5   Specifically, Glassdoor stated, Rightsize's reviewers, like all authors of reviews on

6   glassdoor.com, provided their e-mail addresses to Glassdoor when they posted their reviews.  (*Id.*

7   ¶ 3; *see also* O'Brien Decl. ¶ 3.)  The reviewers' e-mail addresses contained proper names —

8   none of which was Emily Mackie — and through further research Glassdoor located professional

9   profiles associated with all four of the names referenced in the e-mail addresses.  (O'Brien Decl. ¶

10  4.)  Moreover, three of the individuals, according to their professional information, had worked at

11  Rightsize, and the remaining person worked in the same industry as Rightsize.  (*Id.*)  Glassdoor

12  offered to provide a declaration attesting to these facts in return for the withdrawal of Mackie's

13  motion, but Awtry's counsel declined.  (Frimel Decl. ¶ 4 & Exh. B.)

14  **<u>ARGUMENT</u>**

15  **I.   THE STRICTER STANDARD FOR EVALUATING SUBPOENAS SEEKING THE**
    **IDENTITIES OF ANONYMOUS SPEAKERS SET FORTH IN *2THEMART***
16  **APPLIES**

17      **A.  Applying the *Highfields* Test Would Be Inappropriate Because Awtry Asserts No**
18          **Cause of Action Against the Does**

19      Although Awtry claims the inquiry used in *Highfields* applies, and supports compelling

20  disclosure of the Does' identities, the *Highfields* analysis is intended to determine whether "a

21  private civil plaintiff [who] seeks to discover the identity . . . of an anonymous internet speaker"

22  is entitled to that information.  *Highfields*, 385 F. Supp. 2d at 975.  *Highfields* did not concern

23  whether a private civil *defendant* can, as Awtry seeks to do, compel the disclosure of the

24  identities of anonymous speakers who are *not* alleged to have engaged in tortious conduct, in the

25  hope of substantiating a defense, and different policy considerations apply in such a situation.

26      When a plaintiff can establish a prima facie case of liability on the part of an anonymous

27  speaker, the strength of the speaker's interest in remaining anonymous diminishes, as the speaker

28  should not be permitted to use anonymity to shield themselves from tort liability.  *See, e.g., Art of*

-5-

1   *Living Found. v. Does 1-10*, No. 10-CV-05022, 2011 WL 5444622, *4 (N.D. Cal. Nov. 9, 2011)

2   ("When anonymous speech is *alleged to be unlawful*, the speaker's right to remain anonymous

3   may give way to a plaintiff's need to discover the speaker's identity in order to pursue its claim.")

4   (emphasis added).  No such argument can be made with regard to speakers, like the Does here,

5   against whom no prima facie case of defamation or other liability has (or can) been made.

6   Moreover, if the defendant is anonymous, the plaintiff may not be able to proceed with its claims

7   at all without knowing who the defendant is.  *See 2TheMart*, 140 F. Supp. 2d at 1094-95

8   (observing that, in *Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573 (N.D. Cal. 1999), "the

9   need for the information was especially great because the information sought concerned J. Doe

10  *defendants*," and "[w]ithout the identifying information, the litigation against those defendants

11  could not have continued") (emphasis in original).  By contrast, precluding Awtry from

12  discovering the Does' identities will not completely deprive him of the ability to defend against

13  Mackie's claims (particularly because, as discussed below, the evidence Awtry seeks will not

14  assist his defense of those claims in any event).

15          Further, and tellingly, all of the cases Awtry relies on to support his claim that the

16  Reviews meet the *Highfields* requirements (Mot. at 3-4 & 7) dealt with situations in which the

17  plaintiff sought to assert some cause of action against the anonymous speakers, not to substantiate

18  a potential defense to a third party's claims.  *See In re Anon. Online Speakers,* 661 F.3d 1168,

19  1171 (9th Cir. 2011) (denying writ of mandamus seeking to overturn trial court's order that the

20  "identity of five anonymous online speakers who allegedly made defamatory comments" about

21  plaintiff be disclosed); *Music Group Macao Comm. Offshore Ltd. v. Does*, 82 F. Supp. 3d 979,

22  985 (N.D. Cal. 2015) (denying motion to enforce subpoena seeking anonymous speakers'

23  identities because plaintiff "has not shown a 'real evidentiary basis' for its defamation claim

24  against" defendant); *Art of Living Found.*, 2011 WL 5444622, *10 (quashing subpoena seeking

25  identity of anonymous defendant in defamation action); *Fodor v. Doe*, No. 3:10-CV-0798, 2011

26  WL 1629572, *4 (D. Nev. Apr. 27, 2011) (plaintiff allowed to take discovery concerning

27  anonymous defendant because "he makes out a prima facie claim for defamation *per se*"); *Doe I*

28  *v. Indivs.*, 561 F. Supp. 2d 249, 256 (D. Conn. 2008) (denying motion to quash subpoena seeking

identities of anonymous speakers in defamation action); *Sony Music Ent'mt. Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 567 (S.D.N.Y. 2004) (denying motion to quash subpoena on the ground that "defendants' First Amendment right to remain anonymous must give way to plaintiffs' right to . . . pursue what appear to be meritorious copyright infringement claims"); *Columbia Ins. Co.*, 185 F.R.D. at 580-81 (permitting discovery of identity of anonymous defendant in trademark infringement matter).

**B. *2TheMart* Sets Forth the Proper Analysis Where a Subpoena Seeks Nonparties' Identities**

The only cases Glassdoor has located concerning a litigant's attempt to learn the identities of *nonparty* anonymous speakers have held that subpoenas seeking such evidence are subject to a stricter test than subpoenas seeking defendants' identities. *See 2TheMart*, 140 F. Supp. 2d at 1095 ("The Court will consider four factors in determining whether the subpoena should issue" in evaluating a "subpoena that seeks the identity of an anonymous Internet user who is not a party to the underlying litigation," including "whether (1) the subpoena seeking the information was issued in good faith and not for any improper purpose, (2) the information sought relates to a core claim or defense, (3) the identifying information is directly and materially relevant to that claim or defense, and (4) information sufficient to establish or to disprove that claim or defense is unavailable from any other source."); *see also Cornelius v. DeLuca*, No. 1:10-cv-027, 2011 WL 977054, *4 (D. Idaho Mar. 15, 2011) (because nonparty "is not a party to this lawsuit, and Plaintiff has no need to ascertain [nonparty's] identity to serve process, . . . . Plaintiffs must clear an extra-high hurdle to justify the disclosure of a non-party, anonymous poster: 'non-party disclosure is only appropriate in the *exceptional* case where the compelling need for the discovery sought outweighs the First Amendment rights of the anonymous speaker'") (quoting *2TheMart*, 140 F. Supp. 2d at 1095) (emphasis in original); *Enterline v. Pocono Med. Ctr.*, 751 F. Supp. 2d 782, 788 (M.D. Pa. 2008) (plaintiff seeking to use anonymous commenters as witnesses was not entitled to learn their identities because "[t]he Court does not find that the Plaintiff has demonstrated that the information required to prove her claims of harassment and discrimination are unavailable from other sources"). The Court should apply the *2TheMart* analysis, and, for the

-7-

reasons stated below, find that compelling the disclosure of the Does' identities is unwarranted. But even assuming the *Highfields* inquiry should be used, it leads to the same result.

## II.   EVEN IF THE *HIGHFIELDS* TEST APPLIES, AWTRY IS NOT ENTITLED TO COMPEL DISCLOSURE OF THE REVIEWERS' IDENTITIES

As *Highfields* recognized, "the interests and policies invoked by" Glassdoor in objecting to Awtry's subpoena "are of considerable potential significance.  Indeed, they are rooted in the First Amendment to the Constitution of the United States."  *Highfields*, 385 F. Supp. 2d at 974-75.  The right at stake is, specifically, the reviewers' "right to express most effectively and anonymously, without fear of expensive adverse consequences, [their] views . . . ."  *Id.*

In the interest of protecting this important right, *Highfields* set forth two requirements that a plaintiff seeking to compel disclosure of the identity of an anonymous speaker must meet. "Because of the importance and vulnerability of" the First Amendment rights at stake, "the first component of the test is a requirement that the plaintiff persuade the court that there is a real evidentiary basis for believing that the defendant has engaged in wrongful conduct that has caused real harm to the interests of the plaintiff that the laws plaintiff has invoked were intended to protect."  *Id.* at 975.  To meet this requirement, "the plaintiff must adduce *competent evidence* — and the evidence plaintiff adduces must address *all* of the inferences of fact that plaintiff would need to prove in order to prevail under at least one of the causes of action plaintiff asserts." *Id.* (emphasis in original).  "[T]he second component of the test requires the court to assess and compare the magnitude of the harms that would be caused to the competing interests by a ruling in favor of plaintiff and by a ruling in favor of defendant.  If, after such an assessment, the court concludes that enforcing the subpoena would cause relatively little harm to the defendant's First Amendment and privacy rights and that its issuance is necessary to enable plaintiff to protect against or remedy serious wrongs," the disclosure of the anonymous speaker's identity may only then be compelled.  *Id.* at 976.

//

//

### A. Even if a Defendant Can Compel Disclosure of a Nonparty's Identity under *Highfields*, Awtry Does Not Provide a "Real Evidentiary Basis" for Doing So

#### 1. Even assuming Mackie authored the Reviews, that fact would not support Awtry's purported truth defense

In her lawsuit against Awtry, Mackie does allege that Awtry "falsely described [her] as a liar" (Mot. Exh. A, ¶ 35), but goes on to explain that Awtry accused her of being a liar specifically in the context of her interior design work, stating that "[t]he False and Defamatory Statement [by Awtry] falsely conveys a meaning that Ms. Mackie is *professionally dishonest in her capacity as an interior designer*" (*id.* ¶ 174 (emphasis added)).  This accusation is false, Mackie alleges, because "Ms. Mackie is not *professionally dishonest*."  (*Id.* ¶ 175 (emphasis added); *see also id.* ¶ 225 (Awtry "posted the False and Defamatory Statement . . . with the reasonable expectation that consumers and prospective clients would choose *not to use [Mackie's] services* based on" Awtry's statements) (emphasis added).)

However, by way of his subpoena to Glassdoor, Awtry seeks to show that "Mackie is a liar" because she allegedly "claim[ed] to have worked at Rightsize" in her reviews on glassdoor.com, despite not having worked there.  (Mot. at 2.)  Awtry does not claim that Mackie wrote the Reviews in her capacity as an interior designer — instead, the Reviews' purpose, according to Awtry, was to gain an advantage in the custody dispute.  (*Id.* at 5.)  Thus, even assuming Awtry can elicit evidence from Glassdoor showing that Mackie's purported statement that she worked at Rightsize was false, that would not help Awtry defend against Mackie's claim that Awtry defamed her in her capacity as an interior designer.  *See, e.g., Berkos v. Nat'l. Broad. Co.*, 515 N.E.2d 668, 679 (Ill. App. Ct. 1987) (defendants failed to establish affirmative defense of truth, because defendants "do not contend, suggest, or imply that [plaintiff] may indeed have 'accepted a bribe,'" as plaintiff claimed defendants accused him of doing).  Thus, learning the Does' identities would not help Awtry substantiate his truth defense.  *See 2TheMart*, 140 F. Supp. 2d at 1096 (quashing subpoena because, *inter alia*, defendant "failed to demonstrate that the identity of the Internet users is directly and materially relevant to a core defense").

1

### 2. Awtry's evidence that Mackie authored the Reviews is unpersuasive

2      Further, even assuming that, if Awtry can provide a "real evidentiary basis" for his claim

3   that Mackie wrote the Reviews, Awtry can pass the *Highfields* test, Awtry fails to set forth such a

4   basis.  Awtry notes that "each of the four posts were [sic] made on the same dates as events in the

5   contentious custody battle between Mr. Awtry and Ms. Mackie, or on a date when Mr. Awtry had

6   his son," and "two of the posts were made by a self-identified 'interior designer.'"  (Mot. at 5.)

7   Awtry fails to explain why the fact that the Reviews were posted on the dates of "events in the

8   custody battle," or when he "had his son," tends to indicate Mackie was responsible for the

9   Reviews.  Awtry makes no claim that Mackie actually introduced the Reviews in the custody

10  proceedings, and if she did not do so, it is unclear what her purpose in posting the Reviews on the

11  custody hearing dates could have been.  Nor is it clear how Mackie could have used the Reviews

12  as favorable evidence in the custody hearings.  Similarly, the fact that two Reviews were authored

13  by "self-identified interior designers" is unremarkable, as Rightsize, according to its website,

14  "specialize[s] in office interior design."  (Frimel Decl. Exh. C.)

15      Thus, Awtry's suggestion that Mackie authored the Reviews is nothing more than

16  speculation (and, as noted above, contrary to the information Glassdoor has located).  *See*

17  *Highfields*, 385 F. Supp. 2d at 975, 977 (because "[a]llegation and speculation are insufficient" to

18  provide a real evidentiary basis, and "[p]laintiff has pointed to no evidence of actual confusion"

19  to support trademark claim, plaintiff failed to offer adequate evidence); *2TheMart*, 140 F. Supp.

20  2d at 1097 (although defendant "speculates that the users of the . . . website" at issue "may have

21  been engaged in stock manipulation," defendant's "innuendos of stock manipulation do not

22  suffice to overcome the First Amendment rights of the Internet users," and thus subpoena seeking

23  users' identities quashed).

24  //

25  //

26

27

28

1

2

**B.  Granting Awtry's Motion Would Chill the Reviewers' Exercise of their First Amendment Rights, and Awtry Fails to Show that Forcing Glassdoor to Disclose the Reviewers' Identities Is Needed to "Remedy Serious Wrongs"**

3

4

**1.  Granting Awtry's motion would have a substantial chilling effect on constitutionally protected speech**

5         Awtry asserts that granting his motion will cause "relatively little harm to the anonymous

6   speaker's First Amendment rights," as "disclosure of the requested information would not chill

7   true employees from posting on Glassdoor.com because disclosure would be limited to those

8   situations when there is evidence that the post was fraudulent."  (Mot. at 7.)  Awtry is mistaken.

9         *First*, as noted above, the "evidence that the post was fraudulent" adduced by Awtry does

10  nothing to show that Mackie was responsible for the Reviews.  Thus, even assuming that granting

11  Awtry's motion would not chill protected speech if there was persuasive evidence that the

12  Reviews are "fraudulent," there is no such evidence.

13        *Second*, even assuming Awtry's evidence that Mackie authored the Reviews is persuasive,

14  that does nothing to diminish the chilling effect that requiring the disclosure of the Does'

15  identities would have on the candid expression of opinion on glassdoor.com.  A typical Glassdoor

16  user has no way of knowing, when they post a review, whether a litigant like Awtry may later

17  seek to discover the user's identity based solely on his belief that a litigation adversary authored

18  the review.  Thus, compelling Glassdoor to identify the Does will foster uncertainty among

19  reviewers on glassdoor.com as to whether their names will become discoverable in civil litigation,

20  and whether they will become the target of lawsuits.  *See Art of Living Found.,* 2011 WL

21  5444622, *7 ("[D]isclosure of [anonymous defendant's] identity here could discourage other

22  bloggers from engaging in lawful, critical speech . . . ."); *Highfields*, 385 F. Supp. 2d at 980-81

23  ("[I]f the court were to enforce plaintiff's subpoena, the court would be enabling plaintiff to

24  impose a considerable price on defendant's use of" website at issue, which "would include public

25  exposure of plaintiff's identity and the financial and other burdens of defending against a multi-

26  count lawsuit").

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 2. The information sought in Awtry's subpoena is irrelevant to his defense against Mackie's defamation claim

As noted above, Awtry's stated goal in serving the subpoena is to "support his defense that Ms. Mackie is a liar" by showing that she authored the Reviews. (Mot. at 2.) But Awtry's subpoena is not properly tailored to achieve that goal. Instead of seeking only documents reflecting that *Mackie* wrote the Reviews, Awtry's subpoena seeks "[a]ny and all personally identifying information associated with" "the comments made about Rightsize . . . on Glassdoor.com." (Flotte Decl. Exh. 1, Exh. A.) In other words, Awtry demands the identity of *anyone* who said *anything* about Rightsize on glassdoor.com.

Because learning the identities of reviewers other than Mackie would do nothing to support Awtry's defense that "Mackie is a liar," the subpoena is substantially overbroad, is not "necessary to enable [Awtry] to protect against or remedy serious wrongs," *Highfields*, 385 F. Supp. 2d at 976, and at the very least should be limited to documents (assuming, contrary to Glassdoor's research, that any exist) tending to show Mackie wrote the Reviews. *See Xcentric Ventures, LLC v. Arden*, No. C 09-80309, 2010 WL 424444, *3 (N.D. Cal. Jan. 27, 2010) (limiting subpoena seeking identities of anonymous speakers because "the scope of the subpoena . . . encompasses documents that are not relevant to . . . establishing the true identity of ComplaintsBoard.com," seeking, *inter alia*, "any random e-mail address mentioned on the website"); *Highfields*, 385 F. Supp. 2d at 972 n.1 (noting that "[t]he subpoena is very broad" because plaintiff "has offered no justification for acquiring information about the user registered under the name 'ipump2004,'" or "'all' of the documents exchanged between Yahoo! and the users," and thus the District Court should "reduce, considerably, the scope of the subpoena").

Awtry's assertion that the subpoena is appropriately tailored to serve his stated goals because he "is only seeking discovery of limited Glassdoor.com posts, specifically four out of more than the [sic] 8 million company reviews Glassdoor claims to have compiled" (Mot. at 8) is without merit. First, Awtry's subpoena does not seek the identities of the authors of four reviews of Rightsize, but of the authors of *all* "comments made about Rightsize . . . on Glassdoor.com" (Flotte Decl. Exh. 1, at 4), and there were nine such reviews as of the date of Awtry's motion

-12-

(O'Brien Decl. Exh. A).  Second, as noted above, if all Awtry wants to know is whether Mackie wrote the Reviews, Awtry should be seeking documents showing that she authored the Reviews, not the identities of other persons who may have done so.  Third, Awtry's suggestion that he is exercising restraint by not seeking the identities of the authors of all "8 million" reviews on glassdoor.com is specious, as information about the authorship of millions of reviews unrelated to Rightsize plainly would be useless to Awtry.

### 3.   Awtry could have obtained the information he allegedly needs from Mackie or via an internal investigation

Awtry's subpoena is not "necessary to remedy serious wrongs" for yet another reason: although Awtry asserts that obtaining the reviewers' identities via his subpoena is "critical to [his] . . . defense in the underlying lawsuit" (Pl.'s Mem. at 1), because he supposedly needs to know if Mackie authored the Reviews, Awtry nowhere claims to have made any attempt to learn the reviewers' identities through discovery to Mackie.  Awtry surely could have propounded interrogatories, or posed deposition questions, to Mackie in the Illinois Action regarding whether she wrote the reviews.  Presumably, he could also have conducted an internal investigation at Rightsize to determine if any of its current or former employees authored the Reviews.

Awtry's apparent failure to pursue the information he seeks by means other than subpoenaing a nonparty, and risking disclosure of the identities of third parties unrelated to the underlying dispute, requires the denial of his motion.  *See Art of Living Found.*, 2011 WL 5444622, *10 (quashing subpoena seeking identity of anonymous poster on the grounds that, *inter alia*, "Plaintiff could acquire some of the information it seeks — such as the number of people who viewed or downloaded the [post] . . . from Google or Automattic"); *Enterline.*, 751 F. Supp. 2d at 788 (denying motion to compel newspaper to produce anonymous commenters' identities because "[t]he Court does not find that the Plaintiff has demonstrated that the information required to prove her claims . . . [is] unavailable from other sources," as such information may "be obtained through normal, anticipated forms of discovery"); *2TheMart*, 140 F. Supp. 2d at 1097 (quashing subpoena seeking anonymous speakers' identities because defendant "failed to demonstrate that the information it needs to establish its defense is

unavailable from any other source").

### 4.  Glassdoor's Privacy Policy does not assist Awtry in meeting the *Highfields* standard

Awtry asserts that "users of Glassdoor do not have a heightened expectation of privacy based upon Glassdoor's Privacy and Cookie Policy," because that policy states that "[w]e will disclose data if we believe in good faith that such disclosure is necessary to comply with relevant laws or to respond to subpoenas or warrants or legal process served on us."  (Mot. at 7.)  As an initial matter, Awtry omits the key next sentence, which says that "[o]ur general procedure with respect to civil subpoenas requesting user data is to require a court order, binding on Glassdoor, before we release such information."  (O'Brien Decl. Exh. B.)  In other words, Glassdoor, generally speaking, contests subpoenas seeking its users' identities in court.  If anything, this contravenes Awtry's claim that Glassdoor's privacy policy diminishes the Does' expectation of privacy.  *See, e.g., McVicker v. King*, 266 F.R.D. 92, 96 (W.D. Pa. 2010) (First Amendment precluded disclosure of anonymous bloggers' identities, because, *inter alia*, the website on which they posted had a "Privacy Policy clearly reflect[ing] that [the website] will disclose its users' personally identifiable information only in very limited situations").  Further, the language cited by Awtry in no way guarantees Glassdoor will produce reviewers' identities in response to subpoenas — it says only that Glassdoor will do so *if* it believes such disclosure is legally required (which, in this case, it of course does not).

Awtry's reliance on *Doe I v. Individuals*, 561 F. Supp. 2d 249 (D. Conn. 2008) (Mot. at 7), is misplaced.  In *Doe I*, the court held, in a defamation action, that the disclosure of an anonymous defendant's identity could be compelled where, among other factors, "AT&T's Internet Services Privacy Policy state[d] . . . '[w]e may, where permitted or required by law, provide personal identifying information to third parties . . . . [t]o comply with court orders, subpoenas, or other legal or regulatory requirements," and "[t]hus, [defendant] has little expectation of privacy in using AT&T's service to engage in tortious conduct that would subject him to discovery under the federal rules."  *Id.* at 255.  AT&T, unlike Glassdoor, made no statement in its privacy policy to the effect that it would not comply with subpoenas absent a

court order. (O'Brien Decl. Exh. B.) Moreover, *Doe I* specifically discussed the defendant's "expectation of privacy in using AT&T's service to *engage in tortious conduct*," which distinguishes this case because Awtry does not allege that the Does engaged in tortious conduct. Finally, the court's decision relied on a host of factors not present here, including (1) the fact that the "plaintiff ha[d] undertaken efforts to notify the anonymous posters that they are the subject of a subpoena"; (2) "there [were] no other adequate means of obtaining" the defendant's identity because "subscriber data is the plaintiffs' only source" of that information; and (3) "most importantly . . . the plaintiffs have made an adequate showing as to their claims against the anonymous defendant." *Doe I*, 561 F. Supp. 2d at 255.

     **5.  The supposed fact that the Reviews are "not sarcastic" is irrelevant, and in any event the Reviews' exaggerated, emotionally charged nature renders them opinion for defamation purposes**

       **a.  Whether the Reviews are fact or opinion is irrelevant to whether, as Awtry claims, Mackie authored them**

Awtry next asserts that the Court should enforce his subpoena because "the comments in issue are posted in a manner that is not sarcastic, but rather is meant to be a serious review on [sic] Mr. Awtry's company and his abilities as a CEO." (Mot. at 8.) Thus, Awtry claims, "the negative posts are likely to cause Mr. Awtry and Rightsize Facility serious harm if they are denied discovery on the identity of the anonymous online speaker." (*Id.*)

As an initial matter, Awtry's suggestion that a reasonable reader would take the Reviews seriously has no bearing on whether he is entitled to the Does' identities. Awtry does not claim the Does defamed him, but simply that he needs to know whether Mackie is one of the Does to defend against *her* defamation claim. (*Id.* at 7.) Thus, whether the Reviews would be taken as fact or opinion, which relates to whether they are capable of being defamatory, is not relevant. *See, e.g., Piping Rock Ptnrs. v. David Lerner Assocs., Inc.*, 946 F. Supp. 2d 957, 971 (N.D. Cal. 2013) ("Generally, statements of opinion are not actionable as defamation, whereas statements of fact are actionable.").

**b. In any event, the Reviews' language would lead a reasonable reader to view them as opinion**

Even assuming the issue of whether the Reviews would be construed as fact or opinion is relevant to the merits of Awtry's motion, a reasonable reader would take the Reviews as non-actionable expressions of opinion. The Reviews are written in a hyperbolic, informal tone that would lead a reasonable reader to conclude they are not meant as statements of objective fact:

- The March 5, 2015 Review characterizes Rightsize as "Chaotic," and states that "everyone [is] running around the office like a chicken with its head cut off." (O'Brien Decl. Exh. A, at 4.)

- The July 8, 2015 Review refers to Rightsize as the "Worst Ever," calls management "[t]wo brothers that think they rule the earth," and advises management to "get over yourself & stop talking." (*Id.*)

- The July 20, 2015 Review states that "[t]he owner is horrible. He is unprofessional and rude. Screams at his employees constantly. How he's stayed in business this long is beyond me." (*Id.*)

- The July 22, 2015 Review calls Rightsize the "Worst Company Ever," and says that "[e]very person other than a few designers are [sic] cold" and "[t]hey're digging their own grave." (*Id.* at 3.)

Further, the wording of the surrounding reviews is equally exaggerated and informal — for instance, one review calls working at Rightsize the "[b]iggest career mistake I ever made!" and says the owners are "completely manic, egotistical and ruthless," and another calls Rightsize a "[t]errible, convoluted system." (*Id.* at 1-2.)

In light of this language, the Reviews are properly viewed as opinion and thus protected from defamation liability. *See Music Group Macao*, 82 F. Supp. 3d at 986 (quashing subpoena seeking anonymous defendant's identity because, "[v]iewed 'in context,' . . . amid the blizzard of invective from an obviously disgruntled person," defendant's statement that plaintiff evaded taxes was a "rant among countless others from someone with an obvious grudge against" plaintiff); *Highfields*, 385 F. Supp. 2d at 978 (quashing subpoena seeking anonymous defendants' identities

on the ground that "[t]here is so much obvious garbage in the messages that appear in this 'venue' . . . that it is highly unlikely that a reader of a message in this setting would approach it with anything but skepticism — as to both content and source").

Awtry relies on *Fodor v. Doe*, No. 3:10-cv-0798, 2011 WL 1629572 (D. Nev. Apr. 27, 2011), but that case is inapposite.  As an initial matter, *Fodor* permitted the plaintiff to conduct discovery concerning the identities of anonymous defendants on the ground that "he makes out a prima facie claim for defamation *per se*" against them, whereas, as noted above, Awtry is not suing the Does and does not claim to have made out a prima facie case of defamation against them.  *Id.* at *4.  Moreover, the court in *Fodor* made no indication that the language of the blog post at issue was hyperbolic or informal, simply describing it as saying the plaintiff was linked to an individual "charged with 'five serious crimes' who used 'investor money in shallow attempts to cover up his crimes.'"  *Id.* at *5.

### c.   The Reviews' presence in an anonymous internet forum, and Glassdoor's statements, would lead a reasonable reader to construe them as opinion

The fact that the Reviews were written by anonymous individuals in an internet forum also counsels in favor of finding the Reviews to be non-actionable opinion.  *See Summit Bank v. Rogers*, 206 Cal. App. 4th 669, 696 (2012) (A reasonable reader "should be predisposed to view" anonymous internet forums "with a certain amount of skepticism, and with an understanding that they will likely present one-sided viewpoints rather than assertions of provable facts.  '[A]ny reader familiar with the culture of . . . most electronic bulletin boards . . . would know that board culture encourages discussion participants to play fast and loose with facts.'") (quoting Lidsky, *Silencing John Doe: Defamation & Discourse in Cyberspace*, 49 DUKE L.J. 855, 936-37 (2000)); *Global Telemedia Int'l., Inc. v. Doe 1*, 132 F. Supp. 2d 1261, 1267 (C.D. Cal. 2001) ("[T]he general tenor, the setting and the format of [the allegedly defamatory] statements strongly suggest that the postings are opinion," because "[t]he statements were posted anonymously in the general cacophony of an Internet chat-room in which about 1,000 messages a week are posted about" plaintiff).

RESPONDENT GLASSDOOR, INC.'S OPPOSITION TO MOTION TO ENFORCE SUBPOENA

Further, Glassdoor's site makes clear that Glassdoor does not control the contents of users' posts, and that it simply provides a forum for third parties to express opinions.  (O'Brien Decl. Exh. C (glassdoor.com's front page stating that its content is "all posted anonymously by employees and job seekers"); *id.* Exh. D (glassdoor.com's Terms of Use stating that "we assume no responsibility for unintended, objectionable, inaccurate, misleading, or unlawful Content made available by other Users," "we [(Glassdoor)] make no guarantees about the accuracy, currency, suitability, or quality of the information in [glassdoor.com's] Content," and "[w]e are not responsible for any incorrect or inaccurate Content . . . posted on the Services," *i.e.*, the Glassdoor website).)  These disclaimers also support a finding that a reasonable reader would take the Reviews as opinion.  *See ZL Techs., Inc. v. Gartner, Inc.*, 709 F. Supp. 2d 790, 797 (N.D. Cal. 2010) (in defamation action concerning review of plaintiff's products, the fact that the review stated that "[t]he opinions expressed herein are subject to change without notice" supported finding that review was protected opinion); *SPX Corp. v. Doe*, 253 F. Supp. 2d 974, 981 (N.D. Ohio 2003) (in defamation action concerning statements on Yahoo! message board, disclaimer providing that "[t]his board is not connected with the company" it concerned, and "[t]hese messages are only the opinion of the poster, are no substitute for your own research, and should not be relied upon for trading or any other purpose," supported finding that statements were opinion); *Agora, Inc. v. Axxess, Inc.*, 90 F. Supp. 2d 697, 704-05 (D. Md. 2000) (defendant's disclaimer stating that its site's ratings of stock promoters' disclosure policies "are the opinion of the publisher," and "do[] not purport to be a complete analysis of the aforementioned media," supported finding that rating of plaintiff was opinion).

Awtry claims a reasonable reader would construe the Reviews as fact based on Glassdoor's statement that the site contains information about "what it's really like to work or interview" at the reviewed companies "according to employees."  (Mot. at 8.)  This statement, Awtry says, shows that "Glassdoor.com is designed to stimulate accurate reviews."  (*Id.*)  Read in the context of the disclaimer language above, however, this statement in no way "vouches" for the truth of reviews on the site — rather, it makes clear that the reviews are "according to employees," indicating that third parties, and not Glassdoor, are solely responsible for the

-18-

1

opinions in the reviews.

2

      **6.** **The Court's ability to enter a protective order preventing public disclosure of the Does' identities is irrelevant to the *Highfields* analysis**

3

4

Finally, Awtry suggests that ordering disclosure of the Does' identities will not run afoul

5

of the First Amendment because the Court can "order that the identifying information being

6

sought cannot be shared with anyone other than the parties in this action and their counsel of

7

record," citing *Signature Mgmt. Team, LLC v. Automattic, Inc.*, 941 F. Supp. 2d 1145, 1156 (N.D.

8

Cal. Apr. 22, 2013).  In fact, *Signature Management Team* stated that a protective order barring

9

disclosure of the anonymous defendant's identity was appropriate only *after* determining that,

10

"[u]nder either test identified by" the defendant, "the First Amendment does not preclude

11

disclosure of his identifying information pursuant to a DMCA subpoena."  *Id.* at 1156.  Moreover,

12

even if the Does' identities were only shared with Awtry, that would nonetheless enable Awtry to

13

litigate against them, which would disserve *Highfields'* goal of not "enabling plaintiff[s] to

14

impose a considerable price on" anonymous internet speakers by threatening "public exposure of

15

[their] identit[ies] and the financial and other burdens of defending against a multi-count lawsuit."

16

*Highfields*, 385 F. Supp. 2d at 980-81.

17

## **CONCLUSION**

18

For the foregoing reasons, Awtry's motion should be denied.

19

20

               /s/ William J. Frimel

21

Dated:  March 4, 2016          WILLIAM J. FRIMEL
                      Attorneys for Nonparty GLASSDOOR, INC.

22

23

24

25

26

27

28

RESPONDENT GLASSDOOR, INC.'S OPPOSITION TO MOTION TO ENFORCE SUBPOENA