UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MASON AWTRY,<br><br>           Plaintiff,<br><br>     v.<br><br>GLASSDOOR, INC.,<br><br>           Defendant. | Case No.  16-mc-80028-JCS<br><br>**ORDER DENYING MOTION TO ENFORCE COMPLIANCE WITH THIRD PARTY SUBPOENA**<br><br>Re: Dkt. No. 1 |

## I.      INTRODUCTION

Mason Awtry, who is the defendant in a federal lawsuit pending in the Northern District of Illinois ("the Illinois Action"), brings a motion to compel Glassdoor, Inc. ("Glassdoor") to disclose the identities of individuals who posted certain anonymous reviews on its website ("Motion").  Glassdoor, which is not a party to the Illinois Action, opposes the motion, arguing that Awtry has not satisfied the stringent standards for disclosure of anonymous speech under the First Amendment.  A hearing on the Motion was held on April 1, 2016 at 9:30 a.m.[1]  For the reasons stated below, the Motion is DENIED.

## II.     BACKGROUND

### A.     The Illinois Action

In the Illinois Action, Emily Mackie and the company she owns, Inspired Interiors, Inc. ("Inspired Interiors"), are suing Mason Awtry, "with whom [she] once had a personal relationship," and one of Awtry's "associates," Michael Mayes.  *See* Motion, Ex. A (Second Amended Complaint, Docket No. 31, Case No. 14-cv-09206, N.D. Ill.) (hereinafter, "SAC").  Mackie and Inspired Interiors (hereinafter, referred to collectively as "Illinois Plaintiffs"), allege

---

[1] Counsel for Awtry appeared at the hearing but Glassdoor's counsel did not, apparently due to a calendaring error relating to the time of the hearing.

United States District Court
Northern District of California

United States District Court
Northern District of California

that Awtry and Mayes acquired the domain name inspiredintereriors.com and posted on it, *inter alia*, "Find Out the Truth About Emily Mackie . . . liar, cheater." SAC ¶¶ 28-36.  The website also allegedly stated that Mackie was "adulterous" and promised to "reveal the truth about" her.[2] *Id.* ¶¶ 33, 37.  According to the SAC, Inspired Interiors' website is operated at a different domain name - - inspiredinterior.com; Mackie had, since 2003, hoped to acquire the domain name inspiredinteriors.com (with an "s" at the end of the word "interior"), but the owner of that domain name was asking a "high price" for it - between $5,000 and $10,000 - and therefore Mackie had not purchased that domain name.  SAC ¶¶ 17-22.  Awtry was allegedly aware that Mackie wanted to acquire the inspiredinteriors.com domain name and purchased it "to be confusingly similar to the domain name" used by Inspired Interiors.  *Id.* ¶ 30.

The Illinois Plaintiffs allege that they discovered the statements on the inspiredinteriors.com website October 14, 2014, when a former employee left Mackie a voicemail message saying he thought the Inspired Interiors website had been hacked; on the same day, another individual called Mackie to tell her that she had tried to access the Inspired Interiors website but instead had found a different website.  *Id.* ¶¶ 25-26.  According to the Illinois Plaintiffs, the inspiredinteriors.com website contained a photograph of Mackie that was taken directly from the (official) Inspired Interiors website.  *Id.* ¶ 32.  When Mackie investigated the WHOIS information for inspiredinteriors.com, the SAC alleges, she discovered that it was registered with the address "432 Truth" street and remembered that her personal database contained a similar street address.  *Id.* ¶¶ 46-48.  She then allegedly "learned that an unknown iPad Mini had 'synced' with information from her iPad through her Apple iCloud Account."  *Id.* ¶ 49.  The Illinois Plaintiffs allege that Awtry accessed Mackie's iCloud account without authorization and thereby gained access to personal and professional private information that he

---

[2] In the Motion, Awtry states that "Ms. Mackie alleges that Mr. Awtry defamed her by posting negative comments on her company, Inspired Interiors' website."  Motion at 1 (citing SAC ¶¶ 33-37).  This is an inaccurate characterization of the allegations in the Illinois Action, in which the plaintiffs allege that the statements at issue were posted *not* on Inspired Interiors' official website but rather, on a website that the Illinois Plaintiffs neither owned nor operated with a confusingly similar name and which Awtry and Mayes had acquired with the express purpose of  using to post the defamatory statements about Mackie.

United States District Court
Northern District of California

used to harm Mackie and Inspired Interiors. *Id*. ¶¶ 64-69.

On the basis of these factual allegations, the Illinois Plaintiffs assert claims for violations of: 1) the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (Awtry); 2) the Stored Communications Act, 18 U.S.C. §§ 2701 *et seq.* (Awtry); 3)  the Electronic Communication Privacy Act, 18 U.S.C. §§2510,  *et seq.* (Awtry).;  4) the Lanham Act, 15 U.S.C. § 1125(a) (Awtry and Mayes); 5) the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) (Awtry and Mayes);  and 6) the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.* (Awtry and Mayes).  In addition, Plaintiff Emily Mackie asserts a claim for defamation per se against both Awtry and Mayes.  In the Defamation claim, Mackie alleges that the allegedly defamatory statement ("Find Out the Truth About Emily Mackie . . . liar, cheater") "conveys the meaning that Ms. Mackie lies in her profession[,]" "cheats in her profession[,]" and is "professionally dishonest in her capacity as an interior designer." *Id*. ¶¶ 172-174.

### B.    Glassdoor.Com

Glassdoor operates a website, glassdoor.com, "which provides a forum for current and former employees of companies to anonymously voice opinions regarding those businesses. Declaration of Thomas O'Brien in Support of Respondent Glassdoor, Inc.'s Opposition to Petitioner Mason Awtry's Motion to Enforce Compliance with Third-Party Subpoena ("O'Brien Decl.") ¶ 2.   "An employee can express an opinion about an employer on glassdoor.com by posting a 'review,' in which the employee assigns the employer between one and five stars in a number of categories, and discusses the employer's 'pros and cons.'"  *Id.*  All reviewers must provide an email address when they post a review on glassdoor.com.  Declaration of William J. Frimel In Support of Respondent Glassdoor, Inc.'s Opposition to Petitioner Mason Awtry's Motion to Enforce Compliance with Third-Party Subpoena ("Frimel Decl.") ¶ 3.  Glassdoor's users also must agree to its Terms of Use, including its Privacy Policy.  O'Brien Decl., Ex. D (Glassdoor Terms of Use).

Glassdoor's current Privacy Policy is entitled "How We Share Information" and states as follows:

We do not disclose your individual account or usage data to third

3

parties, except as follows:

- With your consent;
- We use affiliated and unaffiliated service providers all over the world that help us deliver our service and run our business subject to strict confidentiality agreements;
- We share aggregated usage statistics that cannot be used to identify you individually;
- We will disclose data if we believe in good faith that such disclosure is necessary (1) to comply with relevant laws or to respond to subpoenas or warrants or legal process served on us; (2) to enforce our Glassdoor Terms of Use and Privacy Policy; (3) when we believe disclosure is necessary or appropriate to prevent physical harm or financial loss or in connection with an investigation of suspected or actual illegal activity; or (4) as we otherwise deem necessary to protect and defend the rights or property of us, the users of our services, or third parties. Our general procedure with respect to civil subpoenas requesting user data is to require a court order, binding on Glassdoor, before we release such information;
- In a reorganization or sale of our company or assets, your data may be transferred, subject to the acquirer accepting the commitments made in this Statement and compliance with applicable law;
- If you apply for a particular job through Glassdoor, we will disclose your personal information to the employer to whom you apply;
- We may invite you to include your resume or other information in more generally available formats. For example, we may introduce services for employers, recruiters and others that rely on accessing our database of user information. Subject to visibility settings that you control, subscribers to those services will be able to view information that you post;
- We may share certain information that does not identify you personally, but which is unique to your use of Glassdoor, such as job titles that you have entered at the time of registration or on your profile; when we share such information, we do not link job titles with your name when we provide this information to others, such as advertisers, recruiters or employers.

*Id.*, Ex. B. The Terms of Use further provide that "[w]hile [Glassdoor has] no obligation to do so, [it] reserve[s] the right to take appropriate action to protect the anonymity of [its] Members against the enforcement of subpoenas or other information requests that seek a Member's electronic address or identifying information." *Id.*, Ex. D ¶ 7(D).

### C.    The Glassdoor Posts that are the Subject of Awtry's Subpoena

Awtry seeks to compel disclosure of identifying information relating to four negative reviews of Rightsize Facility Performance, Inc. ("Rightsize") that were posted anonymously on

4

United States District Court
Northern District of California

1  Glassdoor's website ("Reviews" or "Glassdoor Reviews").[3]  Awtry Decl. ¶ 4.   Awtry owns

2  Rightsize.  *Id*. ¶ 1.  As discussed further below, Awtry believes, based on the timing and the

3  content of these posts, that Mackie posted these reviews, posing as a former employee of Rightsize

4  even though she never worked for that company.  *Id*. ¶ 5.  If he is correct, this evidence would

5  support his defense against Mackie as to the defamation claim asserted in the Illinois Action, he

6  asserts, because it would show that Mackie is, in fact, a liar.  *Id*.

7      The four posts that are the subject of the subpoena are as follows:

8  • March 5, 2015 review ("the March 5 review"):  In a post with the heading "Chaotic," dated

9      March 5, 2015, the reviewer describes himself/herself as a "Former Contractor – Interior

10     Designer in Chicago, IL" who worked at Rightsize as a contractor for "[l]ess than a year."

11     The reviewer lists the "Pros" of working for Rightsize as "[m]eeting new people and being

12     able to learn new things."  Under "Cons" the reviewer  states that there are "[t]oo many

13     projects going on all at once and everyone [is] running around the office like a chicken

14     with its head cut off," "lead[ing] to many errors and miscommunications." The reviewer

15     further states that the "location is in a really bad neighborhood" but that "[a]t least the

16     parking lot is gated."  The "Advice to Management" of the reviewer is, "Not swearing and

17     yelling at employees. Makes everyone uncomfortable."  Awtry Decl., Ex. 1.

18 • July 8, 2015 review ("the July 8 review"):  In a post with the heading "Worst Ever," dated

19     July 8, 2015, the reviewer describes himself/herself as a "current employee" of Rightsize.

20     Under "Pros" the reviewer writes, "Flexible Schedule That is all I can say."  Under "Cons"

21     the reviewer writes, "[h]orrible micro managing management.  Two brothers that think

22     they rule the earth.  Unrealistic expectations."  Under "Advice to Management," the

23     reviewer writes, "get over yourself & stop talking."  *Id*.

24  _____

25  [3] The subpoena, attached to the Declaration of Sarah Flotte, does not limit the identifying
information to the four negative posts, instead requesting disclosure of such information for all of

26  the reviews that were posted on Glassdoor about Rightsize.  *See* Flotte Decl., Ex. 1 (Subpoena).
According to Glassdoor, at the time the Motion was filed, there were nine reviews of Rightsize

27  posted on glassdoor.com.  Glassdoor Response at 1. In his Reply brief, Awtry clarifies that he is
only seeking identifying information as to the four reviews of Rightsize described herein.  Reply

28  at 6.  Henceforth, the Court construes the subpoena in the limited manner described in Awtry's
Reply brief.

United States District Court
Northern District of California

- July 20, 2015 review ("the July 20 review"):  In a post with the heading "Contractor," dated July 20, 2015, the reviewer describes himself/herself as a "Former Employee." Under "Pros," the reviewer writes, "Despite the chaotic and unorganized office environment most of the people hired into this company are decent, hard working people. I really enjoyed the people I met while there."  Under "Cons" the reviewer wrote, "The owner is horrible.  He is unprofessional and rude.  Screams at his employees constantly. How he's stayed in business this long is beyond me.  As an outside person looking in I truly felt horrible for these full time employees because he is good at hiring and the people he brings on are great people who's [sic] dreams and goals are crushed by the environment and the negativity associated with this place."  Under "Advice to Management," the reviewer wrote, "Unfortunately there is not much the management team can do since the owner is and will always be there.  I enjoyed working with the management team and I think they did a good job with the resources they were given.  Most of them quit because of the environment while I was there." *Id.*

- July 22, 2015 review ("the July 22 review"):  In a post with the heading, "Worst Company Ever," the reviewer describes himself/herself as a "Former Employee – Interior Designer" who worked at Rightsize "[l]ess than a year."  Under "Pros," the reviewer wrote that "[a] few of the employees were friendly."  Under "Cons," the reviewer wrote, "Every person other than a few designers are cold.  It's clear people dislike their jobs.  People sit right next to each other and instead of leaning over to ask a question, they send an email or make a phone call.  Two brothers own the company.  One is family oriented and somewhat nice.  The other is quite the opposite and everyone knows it.  Located in Cicero.  Terrible location . . . ."  Under "Advice to Management," the reviewer writes, "I mentioned the name "Rightsize Facility" to a major design firm in the City of Chicago a few weeks ago and the owner cringed.  We all had a nice laugh.  It was then that I thought to myself, 'Wow. Everyone knows they're a joke.'  No advice necessary.  They're digging their own

6

United States District Court
Northern District of California

1  grave." *Id.*[4]

2  **D.    Contentions of the Parties**

3     **1.  The Motion**

4     In the Motion, Awtry argues that while the right to anonymous speech enjoys First

5  Amendment protection, that right must give way to a need to discover a speaker's identity where

6  the anonymous speech is unlawful.  Motion at 4 (citing *Music Group Macao Commer. Offshore*

7  *Ltd. v. Does*, 82 F. Supp. 3d 979,984 (N.D. Cal. 2015)(Beeler, J.);  *In re Anonymous Online*

8  *Speakers*, 661 F.3d 1168, 1171 (9th Cir. 2011); *Columbia Ins. Co. v. 12 Seescandy.com*, 185

9  F.R.D. 573 (N.D. Cal. 1999);  *Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011

10  WL 5444622, at *1 (N.D. Cal. Nov. 9, 2011)).  In determining where First Amendment protection

11  of anonymous speech ends, Awtry contends, courts look to the nature of the speech at issue.  *Id.*

12  (citing *In re Anonymous Online Speakers*, 661 F.3d 1168, 1174-77 (9th Cir. 2011)).   Awtry

13  argues that because the comments at issue here involve "derogatory statements about a company's

14  owner and commercial criticism," the appropriate test is the one set forth in *Highfields Capital*

15  *Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969 (N.D. Cal. 2005).

16     In *Highfields*, the court adopted a two-part test, asking first whether there is a "real

17  evidentiary basis" for believing that the anonymous speaker has engaged in wrongful conduct that

18  caused real harm to the party seeking discovery; and second, if that threshold requirement is met,

19  balancing the harm resulting from an order requiring disclosure against the harm resulting from an

20  order denying the request for disclosure.  *Id.* According to Awtry, even though *Highfields*

21

22  [4] As of the date Glassdoor filed its Opposition brief, five more reviews had been posted.   These
reviews were mixed.  A review posted on July 29, 2015 gave Rightsize four stars and described
23  the company as "fast growing," the work as "[f]ast paced and engaging" and the employees as a
"fun team."   Similarly, a post on February 8, 2016 entitled "Good Opportunity" gives the
24  company four stars and describes the company as having "fun and hard working staff" and a
"leadership team" that is "very supportive and continually accommodates employee needs."  On
25  the other hand, a review posted on December 15, 2015, entitled "Dysfunctional and toxic place to
work" gives the company one star and states that "[t]he CEO is incredibly sleazy, unprofessional
26  and will swear at you and treat you worse than a piece of dirt."  A review dated January 12, 2016
also gives Rightsize one star, stating that the company has "[p]oor management" and "[t]ons of
27  bureaucracy." The January 12 review describes the "Pros" of working there as "[n]othing."  A
review posted on January 26, 2016 also gives Rightsize one star, listing under "Cons" "No
28  training, hostile workplace, owners that are completely manic, egotistical and ruthless."  O'Brien
Decl., Ex. A.

involved a request by a plaintiff to discover identifying information to pursue a claim against a defendant, as opposed to seeking identifying information to pursue a defense, the test articulated in that case applies here. *Id*. at 5. Awtry further contends both requirements of the *Highfields* test are satisfied under the circumstances here. *Id*.

With respect to the first requirement of *Highfields*, Awtry asserts that "there can be no dispute that [he] has a real evidentiary basis for believing Ms. Mackie posted the negative comments on Glassdoor.com." *Id*. First, Awtry contends the timing of the four Reviews supports the conclusion that they were posted by Mackie because all of the posts were "made on the same dates as events in the contentious custody battle between Mr. Awtry and Ms. Mackie, or on a date in which Mr. Awtry had his son." *Id*. (citing Awtry Decl. ¶¶ 4-16). In particular, Awtry cites the following specific facts relating to the timing of the Reviews in his declaration:

- On March 5, 2015, when the first Review that is the subject of Awtry's subpoena appeared, a hearing was held in the custody case. Awtry Decl. ¶ 8 & Ex. 2 (Docket in Custody Case) at 31.

- On July 8, 2015, when the second Review that is the subject of Awtry's subpoena appeared, a hearing was held in the custody case and Awtry had his son. Awtry Decl. ¶ 11 & Ex. 2 at 50.

- On July 20, 2015, when the third Review that is the subject of Awtry's subpoena appeared, an emergency motion was filed by Awtry in the custody case. Awtry Decl. ¶ 13 & Ex. 2 at 50.

- On July 22, 2015, when the fourth Review that is the subject of Awtry's subpoena appeared, a hearing was held in the custody case and Awtry had his son. Awtry Decl. ¶ 16.

In addition to the timing of the Reviews, Awtry points to the fact that in two of the Reviews (the March 5 review and the July 22 review), the authors identify themselves as interior designers, supporting the conclusion that Mackie (who is an interior designer) posted these reviews. Motion at 5. Awtry also argues that there is a real evidentiary basis for believing Mackie posted the Reviews because they are similar to the defamatory statements that Mr. Awtry is alleged to have

United States District Court
Northern District of California

8

made in the Illinois Action about Mackie's business. *Id.*

Awtry also asserts there can be no dispute that the identifying information he seeks would support his defense against the defamation claim in the Illinois Action as his primary defense to that claim is that Mackie is a liar. *Id.* at 6. As truth is an absolute defense to defamation under Illinois law, he asserts, the fact that Mackie posed as a former employee of Rightsize would support Awtry's main defense to that claim. *Id.*

Awtry further contends that the second step of the *Highfields* test, which requires the Court to balance the harm of disclosure against the harm of protecting the anonymity of the speaker, points in favor of ordering that his subpoena be enforced. *Id.* Specifically, Awtry argues the disclosure will assist him in defending against serious allegations of defamation while "causing relatively minimal harm to the anonymous speaker's First Amendment and privacy rights." *Id.* at 7. Awtry contends "disclosure of contested information would not chill true employees from posting on Glassdoor.com because disclosure would be limited to those situations when there is evidence that the post was fraudulent." *Id.* (citing *Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011 WL 5444622, at *1 (N.D. Cal. Nov. 9, 2011)). According to Awtry, "the possibility that the anonymous online speaker is not actually an employee, and thus not a true critic, negates the likelihood that this would prevent actual employees from posting on Glassdoor.com" and indeed, would "actually help Glassdoor's reputation as only allowing actual employees to post on their site." *Id.*

Awtry also argues that another factor that weighs in favor of disclosure is Glassdoor's Privacy Policy. *Id.* Awtry contends that under Glassdoor's Privacy Policy, users do not have a heightened expectation of privacy because it is expressly stated that Glassdoor will "disclose data if [it] believe[s] in good faith that such disclosure is necessary to comply with relevant laws or to respond to subpoenas or warrants or legal process served on [Glassdoor]." *Id.* (citing *Doe I v. Individuals*, 561 F. Supp. 2d 249, 250 (D. Conn. 2008)).

Awtry also argues that the facts here are distinguishable from those in *Highfields* – in which the court found that disclosure of identifying information about anonymous posters who posted disparaging information about the plaintiff's company was not warranted – because the

posts in this case were serious rather than sarcastic.  *Id.* at 8.  Awtry points out that in *Highfields*, the court relied on the fact that the posts at issue were so obviously sarcastic that they were unlikely to cause serious harm to the reputation of the plaintiff.  *Id.*  (citing 385 F. Supp. 2d at 981).  In contrast, where statements are likely to be taken seriously, Awtry asserts, the balancing in *Highfields*  tends to favor disclosure.  *Id.* (citing *Fodor v. Doe*, No. 3:10-CV-0798-RCJ VPC, 2011 WL 1629572, at *1 (D. Nev. Apr. 27, 2011)).

Finally, Awtry contends the Motion should be granted because his request is "specific and narrowly tailored" in that he is seeking identifying information for only four posts out of the more than 8 million reviews Glassdoor has compiled.  *Id.*  And if the Court has concerns about disclosure, Awtry asserts, it can enter a protective order limiting disclosure to the parties in this action and their counsel of record.  *Id.*

### 2.  Opposition

Glassdoor argues that the Motion should be denied on the basis that the information Awtry seeks is protected under the First Amendment.  Opposition at 1 (citing *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342 (1995)).  First, Glassdoor challenges Awtry's assertion that *Highfields* sets forth the appropriate standard for determining whether the information sought in the subpoena should be disclosed.  *Id.*  Glassdoor contends *Highfields* is applicable only when a plaintiff claims an anonymous *defendant* has engaged in wrongful conduct – not when the person whose identity sought may be a non-party to the litigation.  *Id.*  According to Glassdoor, where the party seeking disclosure can establish a prima facie case of liability on the part of an anonymous speaker, that speaker's interest in remaining anonymous diminishes because the speaker should not be permitted to use anonymity to hide from tort liability.  *Id.* at 5 (citing *Art of Living*, 2011 WL 544622 at * 4).   In that scenario, a plaintiff will be denied the ability to seek any redress unless the identity of the speaker is disclosed, Glassdoor asserts.  *Id.*  In contrast, discovering the identity of the anonymous reviewers on Glassdoor will not "completely deprive [Awtry] of the ability to defend against Mackie's claims," Glassdoor contends.  *Id.*  Glassdoor notes that "all of the cases Awtry relies on to support his claim that the Reviews met the *Highfields* requirements . . . dealt with situations in which the plaintiff sought to assert some cause of action against the anonymous

United States District Court
Northern District of California

1    speakers, not to substantiate a potential defense to a third party's claims." *Id.* (citing *In re*

2    *Anonymous Online Speakers*, 661 F.3d 1168, 1171 (9th Cir. 2011);  *Music Group Macao Comm.*

3    *Offshore Ltd. v. Does*, 82 F. Supp. 3d 979, 985 (N.D. Cal. 2015) (denying motion to enforce

4    subpoena seeking anonymous speakers' identities because plaintiff "has not shown a 'real

5    evidentiary basis' for its defamation claim against" defendant); *Art of Living*, 2011 WL 5444622,

6    *10; *Fodor v. Doe*, No. 3:10-CV-0798, 2011 WL 1629572, *4 (D. Nev. Apr. 27, 2011);  *Doe I v.*

7    *Individuals*, 561 F. Supp. 2d 249, 256 (D. Conn. 2008)).

8            Glassdoor argues that the proper analysis for situations such as this, where a party seeks

9    discovery of the identities of individuals who may be nonparties, is set forth in *Doe v.*

10   *2TheMart.com, Inc.*, 140 F. Supp. 2d 1088 (W.D. Wash. 2001).  *Id.* at 7.   That case sets forth a

11   stricter test, Glassdoor contends, and permits disclosure only in "exceptional circumstances"

12   where a "compelling need" for disclosure of the identity of the anonymous speaker outweighs the

13   speaker's First Amendment rights.  *Id.*   To determine whether this high hurdle is met, according

14   to Glassdoor, courts consider whether "(1) the subpoena seeking the information was issued in

15   good faith and not for any improper purpose, (2) the information sought relates to a core claim or

16   defense, (3) the identifying information is directly and materially relevant to that claim or defense,

17   and (4) information sufficient to establish or to disprove that claim or defense is unavailable from

18   any other source." *Id.* (quoting *Doe v. 2TheMart.com Inc.*, 140 F. Supp. 2d at 1095).  Glassdoor

19   contends that Awtry fails to satisfy the strict standard of *2TheMart.com* but that even under the

20   *Highfields* test, the Motion should be denied.

21           With respect to the first requirement of *Highfields*, Glassdoor argues that Awtry fails to

22   establish, with competent evidence, that there is a "real evidentiary basis" for concluding that the

23   anonymous speech at issue will substantiate his "truth defense" to the defamation claim Mackie

24   asserts against him in the Illinois Action.  *Id.* at 9-10.  Glassdoor advances two arguments in

25   support of this contention. First, it argues that even if Mackie posted the Glassdoor Reviews, there

26   is no evidence that she did so in her capacity as an interior designer; rather, Awtry contends the

27   posts were aimed at gaining an advantage in the parties' custody dispute.  *Id.*  Because the

28   defamation claim in the Illinois Action is based on the allegation that the allegedly defamatory

United States District Court
Northern District of California

1  statements conveyed the meaning that Mackie is *professionally* dishonest, Glassdoor asserts, the

2  information sought here will not provide a complete defense to that claim.  *Id*.

3      Glassdoor further contends that the "real evidentiary basis" requirement is not satisfied

4  because Awtry's evidence that Mackie likely posted the Glassdoor Reviews is unpersuasive.  *Id*. at

5  10.  First, Glassdoor argues that Awtry's reliance on the timing of the posts is misplaced.  *Id*.

6  According to Glassdoor, Awtry points to the fact that the reviews at issue were posted on days

7  when he had his son and/or there were hearings in the custody case, but fails to offer any

8  explanation as to why either of these would "tend to indicate Mackie was responsible for the

9  Reviews."  *Id*.  Glassdoor notes that there is no evidence that Mackie ever attempted to use the

10  posts in the custody battle and it is not even clear how the posts could have been used by Mackie

11  in that dispute.  *Id*.  As to the fact that two of the reviews were posted by self-described "interior

12  designers," Glassdoor argues that there is nothing remarkable about that "as Rightsize, according

13  to its website, 'specialize[s] in office interior design.'"  *Id*. (quoting Frimel Decl., Ex. C (page from

14  Rightsize website)).  In short, Glassdoor contends, Awtry's assertion that the posts are likely by

15  Mackie is mere speculation, which is insufficient to support disclosure under both *Highfields* and

16  *2TheMart.com.  Id*.[5]

17  _____

18  [5] According to Glassdoor, in the meet and confer discussions with Awtry that preceded this
    Motion, its counsel advised Awtry that the information in its possession "strongly suggests

19  Mackie did not author the Reviews."  Opposition at 5 (citing Frimel Decl., Ex. B (email dated
    February 29, 2016 from Frimel to Flotte, stating that if Awtry agreed to withdraw the Motion

20  Glassdoor would be "glad to confirm in writing what would have gone in a declaration making
    clear that Mackie is not the author of any of the reviews")).  Glassdoor has also provided a

21  declaration from counsel explaining the basis for its conclusion that the reviews were not posted
    by Mackie.  *See* O'Brien Decl. ¶¶ 3-4.  In particular, O'Brien states:

22
        3. Rightsize Facility Performance, Inc.'s ("Rightsize") reviewers on
23      glassdoor.com, like all authors of employer reviews on the site,
        provided e-mail addresses to Glassdoor when they posted their
24      reviews. I retrieved the e-mail addresses associated with the four
        reviews referenced in Petitioner Mason Awtry's petition to compel
25      compliance with his subpoena to Glassdoor (specifically, the
        reviews of Rightsize on glassdoor.com dated March 5, 2015, July 8,
26      2015, July 20, 2015, and July 22, 2015).

27      4. All four of the Reviews' authors' e-mail addresses contained
        proper names, none of which was Emily Mackie, and through
28      further research I located professional profiles associated with all
        four names referenced in those e-mail addresses. The profiles of

United States District Court
Northern District of California

United States District Court
Northern District of California

Even assuming that Awtry satisfied the first requirement of *Highfields*, Glassdoor asserts, the balancing required in the second step of the analysis also does not support disclosure of the identities of the anonymous reviewers. *Id*. at 11.  First, Glassdoor argues that requiring disclosure would have a substantial chilling effect on constitutionally protected speech. *Id*.  In particular, even assuming there would be no chilling effect where there is evidence that posts are fraudulent, there is no such evidence here, Glassdoor asserts, for the reasons discussed above. *Id*.  Moreover, Glassdoor contends, even if only "fraudulent posts" were subject to disclosure, the chilling effect would still be significant because "[a] typical Glassdoor user has no way of knowing, when they post a review, whether a litigant like Awtry may later seek discovery of the user's identity based solely on his belief that a litigation adversary authored the review." *Id*.  As a result, Glassdoor argues, "compelling Glassdoor to identify the Does will foster uncertainty among reviewers on glassdoor.com as to whether their names will become discoverable in civil litigation, and whether they will become the target of lawsuits." *Id*. (citing *Art of Living*, 2011 WL 5444622 at *7; *Highfields*, 385 F. Supp. 2d at 980-81).

Second, to the extent Awtry contends the information he seeks will support his defense against Mackie's defamation claim, Glassdoor argues that the subpoena is not "properly tailored to achieve that goal" because it seeks identifying information as to *all* of the reviews of Rightsize. *Id*. (citing Flotte Decl., Ex. 1 (Subpoena)).  "Because learning the identities of reviewers other than Mackie would do nothing to support Awtry's defense that 'Mackie is a liar,'" Glassdoor argues, "the subpoena is substantially overbroad" and "is not 'necessary to enable [Awtry] to protect against or remedy serious wrongs.'"  *Id*. (quoting *Highfields*, 385 F. Supp. 2d at 976). Glassdoor asserts that at a minimum, the subpoena should be limited to documents "tending to show Mackie wrote the Reviews."  *Id*.

Third, Glassdoor argues that Awtry has not demonstrated that enforcing the subpoena is

---

three of those individuals state that they previously worked at Rightsize, and the profile of the remaining individual states that they worked in the same industry as Rightsize.

O'Brien Decl., ¶¶ 3-4.

1      necessary to remedy serious wrongs because he does not claim that he has made any attempt to

2      obtain the information he seeks by other means, such as an internal investigation or by posing

3      questions relating to the reviews to Mackie in a deposition. *Id*. at 13.

4            Fourth, Glassdoor rejects Awtry's reliance on its Privacy Policy, arguing that Awtry

5      omitted key language from the Privacy Policy stating that Glassdoor's typical practice is to seek a

6      court order before complying with a subpoena. *Id*. at 14 (citing O'Brien Decl., Ex. B).  Rather

7      than diminishing its users' expectations of privacy, Glassdoor asserts, its stated privacy policy

8      bolsters that expectation. *Id*.  Nor does *Doe I v. Individuals*, 561 F. Supp. 2d 249 (D. Conn. 2008),

9      cited by Awtry, support a contrary result, Glassdoor argues. *Id*.  In particular, according to

10     Glassdoor, the privacy policy in that case did not state that the party from which disclosure was

11     sought did not comply with subpoenas without a court order. *Id*.

12           Fifth, Glassdoor argues that it is irrelevant whether the statements made on glassdoor.com

13     are sarcastic because Awtry is not claiming that the posts are defamatory in the first instance.

14     Rather, he is merely arguing that Mackie's representation that she worked at Rightsize supports

15     his defense. *Id*. at 15.  Even if the content of the statements were relevant, Glassdoor asserts, a

16     reasonable person would view them as non-actionable opinion. *Id*. at 16-18.

17           Finally, Glassdoor argues that the ability to enter a protective order to protect the identities

18     of the anonymous reviewers is not sufficient to protect the First Amendment rights that are

19     implicated by Awtry's subpoena. *Id*. at 19.  Rather, regardless of whether the Court enters a

20     protective order or not, disclosure is only warranted if Awtry can satisfy the appropriate test under

21     the First Amendment, as was stated in the case upon which Awtry relies, *Signature Management*

22     *Team, LLC v. Automatic, Inc*., 941 F. Supp. 2d 1145, 1156 (N.D. Cal. 2013).

23                         **3.  Reply**

24           In his Reply brief, Awtry argues that Glassdoor has exaggerated the burden imposed under

25     *Highfields* for demonstrating that the first requirement of the test is met, that is, that there is a real

26     evidentiary basis for disclosure.  Reply at 2.  According to Awtry, "the *Highfields* test is less

27     demanding than other tests and does not demand evidence that would be sufficient to survive a

28     hypothetical dispositive motion, as Glassdoor would have the court believe." *Id*. (citing *Music*

United States District Court
Northern District of California

14

*Group v. Macao Commercial Offshore Ltd.*, 82 F. Supp. 3d 979, 983 (N.D. Cal. 2015)).  This lenient standard is met here, according to Awtry.  *Id.*

First, he contends, Glassdoor is incorrect in its argument that the posts on glassdoor.com are not relevant to Awtry's defamation defense because they do not address the alleged false impression that Mackie is *professionally* dishonest.  *Id.*  This is because Illinois law requires only that an alleged defamatory statement be "substantially true" for the truth defense to apply.  *Id.* at 3 (citations omitted).  Moreover, Awtry asserts, to the extent two of the posts identified the reviewer as an interior designer, the postings directly impute Mackie's honesty as an interior designer.  *Id.*

Second, Awtry rejects Glassdoor's contention that his basis for believing Mackie was the individual who posted the reviews at issue is speculative.  *Id.* at 4.  Rather, Awtry argues, his basis for believing the posts were by Mackie is compelling.  *Id.*  In particular, as he argued in the Motion, Awtry points to the timing of the posts, the fact that two posts identified the reviewer as an interior designer, and the fact that the Glassdoor Reviews, like the alleged posts by Awtry, contained speech disparaging Awtry's business.  *Id.*  Awtry also dismisses as "vague and inclusive [sic]" the evidence Glassdoor has offered to show that the Reviews were not, in fact, posted by Mackie.  *Id.*  Awtry notes that the email addresses retrieved by Glassdoor's counsel were "unverified" and that the "further research" conducted by Glassdoor's counsel is not described in any detail.  *Id.*  In short, Awtry contends, Glassdoor's own investigation as to the identity of the reviewers is "guesswork."  *Id.* at 5.

Awtry also rejects Glassdoor's arguments aimed at the second part of the *Highfields* test, requiring a balancing of the interests at stake in connection with the requested disclosure of identifying information for the Glassdoor posts.  Awtry reiterates his argument that "little harm would result from the limited disclosure sought in this case" because if Mackie posted the comments, she is a liar.  *Id.* at 5.  Awtry also clarifies that while the subpoena could be read to require disclosure of identifying information as to *all* posts on Glassdoor about Rightsize, he is only seeking identifying information as to the reviews posted on March 5, 2015, July 8, 2015, July

1   20, 2015 and July 22, 2015.  *Id.* at 6.[6]

2     Awtry also rejects Glassdoor's argument that the subpoena should not be enforced because

3   he has not shown that he attempted to learn the identity of the reviewers from other sources.  *Id.* at

4   7-9. Awtry notes that he did investigate this question by comparing the dates of the posts with his

5   personal calendar, which revealed what he contends is the suspicious timing of the reviews.  *Id.* at

6   7-8.  He also states in his Reply brief (though not in his declaration) that he "talked to the other

7   executive-level employees at Rightsize in an effort to uncover the identity of the authors' posts"

8   but that "[t]hese conversations . . . did not result in any identification."  *Id.* at 8.  Finally, Awtry

9   rejects Glassdoor's assertion that he could have asked Mackie herself if she posted the reviews

10  through deposition questions, representing that he could not have deposed Mackie in the Illinois

11  Action because "discovery is stayed [in that Action] except with limited exception" pending

12  resolution of a motion to dismiss that was filed last May and has not yet been decided.  *Id.*

13    Awtry argues that it is irrelevant whether the posts on glassdoor.com are opinions because

14  he is not seeking to assert a claim for defamation against the authors of the Reviews.  *Id.* at 9.

15    Awtry rejects Glassdoor's contention that the possibility of entering a protective order

16  should have no bearing on the Court's decision, reiterating his position that this is a significant

17  consideration.  *Id.* at 10 (citing *Signature Mgmt. Team, LLC v. Automatic, Inc.*, 941 F. Supp. 2d

18  1145, 1159 (N.D. Cal. 2013)).  He also emphasizes that he is not seeking disclosure of identifying

19  information about the anonymous reviewers in order to pursue claims against them but merely to

20  defend himself in the Illinois Action.  *Id.*

21    According to Awtry, disclosure of identifying information will have only a "minimal

22

23  ———————————————

 [6] In a footnote, Awtry suggests that Glassdoor "would have this Court believe that there are

24  thousands of posts about Rightsize" whereas there were only ten at the time the Reply brief was
    filed.  *Id.* at 6 n. 1.  Awtry does not cite any particular statement in Glassdoor's brief, however,

25  that either states or implies as much.  Moreover, Glassdoor states in the "Fact" section of its brief
    that "[a]s of the date of Awtry's motion, nine reviews of Rightsize . . . had been posted on

26  glassdoor.com by anonymous individuals."  Opposition at 4.  There appears to be no basis for
    Awtry's suggestion that Glassdoor misrepresented the number of posts about Rightsize on its

27  website.

28

United States District Court
Northern District of California

chilling effect" in any event because the subpoena is only directed at those who falsely claim to have been an employee, thus "negat[ing] the likelihood that enforcing the subpoena would prevent actual employees from posting on Glassdoor." *Id*. at 11.

Awtry repeats his argument that the Privacy Policy posted by Glassdoor reduces users' expectation of privacy. *Id*. at 11-12.

Finally, Awtry argues that although the stricter standard of *2TheMart.com* does not apply, he could satisfy that standard. *Id*. at 12-13.

### 4. Glassdoor's Objection to Reply

On March 14, 2016, Glassdoor filed an objection to Awtry's representation that discovery is stayed in the Illinois Action and therefore, he could not inquire of Mackie through discovery in that action as to whether she was the author of the glassdoor.com posts that are the subject of Awtry's subpoena. Docket No. 13 ("Objection"). To the extent Awtry is impliedly asking the Court to take judicial notice of facts relating to the Illinois Action pursuant to Rule 201 of the Federal Rules of Evidence, Glassdoor argues, the request should be denied because Awtry has not provided any documents filed in the Illinois Action reflecting that discovery has been stayed in that case. *Id*. Glassdoor further contends Awtry has misstated the contents of documents filed in the Illinois Action. *Id*. In particular, according to Glassdoor, Awtry did not seek dismissal of Mackie's defamation claim in the pending motion to dismiss, the Illinois Court has expressly held that the parties are permitted to exchange written discovery relating to the claims that are not the subject of the motion to dismiss, and the Illinois Court *did not* expressly prohibit depositions relating to those claims. *Id*.; *see also* Declaration of William J. Frimal, Docket No. 13-1 ("Frimel Objection Decl.") ¶¶ 2-3 & Ex. A (Motion to Dismiss in Illinois Action), B (May 7, 2015 Order in Illinois Action expressly permitting written discovery on claims that are not the subject of Motion to Dismiss).

### III.   ANALYSIS

#### A.   Legal Standard under Rule 45

Under Rule 45(d)(2)(B)(i) of the Federal Rules of Civil Procedure, a party seeking enforcement of a subpoena may bring a motion in "the court for the district where compliance is

required for an order compelling production or inspection." Fed. R. Civ. P. 45(d)(2)(B)(i).

**B.    General Principals Relating to First Amendment Protection of Anonymous Speech**

The Supreme Court has recognized that "an author's decision to remain anonymous, like other decisions concerning omissions or additions to the content of a publication, is an aspect of the freedom of speech protected by the First Amendment." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342 (1995). Indeed, "[t]he right to speak anonymously was of fundamental importance to the establishment of our Constitution." *Doe v. 2TheMart.com Inc.*, 140 F. Supp. 2d 1088, 1092 (W.D. Wash. 2001) (citing *McIntyre*, 514 U.S. at 341-42). In particular, "Justice Black . . . reminded us that even the arguments favoring the ratification of the Constitution advanced in the Federalist Papers were published under fictitious names." *McIntyre*, 514 U.S. at 342 (citing *Talley v. California*, 362 U.S. 60, 64 (1960)). So too were the responses of the anti-federalists, which were published by authors who used such fictitious names as "Centinel," "Brutus" and "The Federal Farmer." *In re Anonymous Online Speakers*, 661 F.3d 1168, 1172-73 (9th Cir. 2011).

Further, it is well-established that anonymous speech on the Internet, like other types of anonymous speech, enjoys First Amendment protection. *In re Anonymous Online Speakers*, 661 F.3d 1168, 1173 (9th Cir. 2011)("online speech stands on the same footing as other speech—there is 'no basis for qualifying the level of First Amendment scrutiny that should be applied' to online speech") (quoting *Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 870 (1997)). As the Ninth Circuit has explained, "the ability to speak anonymously on the Internet promotes the robust exchange of ideas and allows individuals to express themselves freely without 'fear of economic or official retaliation . . . [or] concern about social ostracism.'" *Id*. (quoting *McIntyre*, 514 U.S. at 341-42).

First Amendment protection of anonymous speech "is not unlimited, however, and the degree of scrutiny varies depending on the circumstances and the type of speech at issue." *Id*. Political speech is considered to be "core" speech and is afforded the highest level of First Amendment protection. *McIntyre*, 514 U.S. at 346. Online messages such as the ones at issue

United States District Court
Northern District of California

here are also entitled to some level of First Amendment protection, even if the hurdle for overcoming that protection is less stringent than it is for political speech.  *See In re Anonymous Online Speakers*, 661 F.3d 1168 at 1177;  *see also Highfields Capital Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969 (N.D. Cal. 2005) (finding that identity of individual who anonymously posted derogatory comments about a company on an online message board was protected from disclosure under the First Amendment);  *Art of Living Foundation v. Does 1-10*, No. 10-cv-5022 LHK,  2011 WL 5444622, at *5 (N.D. Cal. Nov. 9, 2011) (finding the standard articulated in *Highfields* applied to anonymously posted online commentary criticizing the plaintiff's organization).

A "variety of standards to benchmark whether an anonymous speaker's identity should be revealed" have been applied by federal district courts and state courts.  *In re Anonymous Online Speakers*, 661 F.3d at 1175.   In *Highfields Capital Management L.P. v. Doe,* the court granted a motion to quash by an "unidentified defendant," finding that the appropriate approach to balancing the various competing interests implicated in that case "has two components, each essential."  385 F. Supp. 2d at 975.  First, the plaintiff must persuade the court that there is a "real evidentiary basis for believing that the defendant has engaged in wrongful conduct that has caused real harm to the interests of the plaintiff that the laws plaintiff has invoked were intended to protect." *Id*. The court explained,

> Allegation and speculation are insufficient. The standards that inform Rule 8 and Rule 12(b)(6) offer too little protection to the defendant's competing interests. Thus, the plaintiff must adduce competent evidence-and the evidence plaintiff adduces must address all of the inferences of fact that plaintiff would need to prove in order to prevail under at least one of the causes of action plaintiff asserts. In other words, the evidence that plaintiff adduces must, if unrebutted, tend to support a finding of each fact that is essential to a given cause of action.

*Id*.  If this evidentiary burden is met, the *Highfields* court held, the court goes on to the second component of the test, which requires the court to "balance the parties' competing interests to determine whether the extent of the harm to defendant's First Amendment and privacy interests could be justified by the magnitude of the contribution that enforcing the subpoena likely would make to the interests plaintiff seeks to advance through the litigation."  *Id*. at 980.

In *Doe v. 2TheMart.com Inc*., 140 F. Supp. 2d 1088, 1094 (W.D. Wash. 2001), the court

also balanced the interests of the party seeking disclosure against First Amendment considerations. In that case, however, the anonymous speakers were not alleged to be unidentified defendants but instead, non-party witnesses whose identities were sought by the defendant to support one of its affirmative defenses.  The court reasoned that in that context, "[t]he standard for disclosing the identity of a non-party witness must be higher  . . . [because] [w]hen the anonymous Internet user is not a party to the case, the litigation can go forward without the disclosure of their identity."  *Id.* at 1095.  "Therefore," the court held, "non-party disclosure is only appropriate in the exceptional case where the compelling need for the discovery sought outweighs the First Amendment rights of the anonymous speaker."  *Id.*;  *see also Anonymous Online Speakers*, 661 F.3d at 1176 (apparently approving the higher standard articulated in *2TheMart.com*, stating that in that case the district court "recognized that a higher standard should apply when a subpoena seeks the identity of an anonymous Internet user who is not a party to the underlying litigation").  The court in *2TheMart.com*  went on to articulate four factors courts should consider in determining whether this standard has been met, asking whether:

> (1) the subpoena seeking the information was issued in good faith and not for any improper purpose, (2) the information sought relates to a core claim or defense, (3) the identifying information is directly and materially relevant to that claim or defense, and (4) information sufficient to establish or to disprove that claim or defense is unavailable from any other source.

*Id*.  It explained that the test "provides a flexible framework" in which the weight of each factor depends on the circumstances of the case.  *Id*.

**C.   Whether Awtry's Subpoena Should be Enforced**

**1.  What Standard Should be Applied to Awtry's Subpoena**

The parties do not dispute that the anonymous speech contained in the Glassdoor Reviews is the sort of speech that is entitled to some degree of protection under the First Amendment.  *See, .e.g., Highfields*, 385 F. Supp. 2d at 976.   The more difficult question is determining the applicable standard to apply in balancing Awtry's interest in disclosure against the First Amendment considerations that weigh in favor of denying Awtry's Motion.  The Court notes that the circumstances in this case are not on all fours with those in either *Highfields* or *2TheMart.com*.

20

In *Highfields*, the court addressed whether it should enforce a subpoena by the plaintiff, Highfields Capital, L.P., seeking disclosure of the identity of an "unidentified defendant" who had posted comments, which "[could] be interpreted as expressing disapproval or criticism of Highfields Capital – mocking its arrogance and condescension and suggesting that its high-priced investment advice is quite vulnerable to being both biased and wrong" - using the screen name "highfieldscapital." 385 F. Supp. 2d at 972, 975.  The plaintiff sought to assert claims against the anonymous speaker for violation of its trademark rights and for unfair competition.  Thus, the anonymous speaker – whoever that might be – was the person whose statements were alleged to be unlawful.  Under those circumstances, the court could reasonably conclude that whoever *posted* the anonymous comments was entitled to a lower degree of protection under the First Amendment than would otherwise be available (although the court ultimately concluded that the First Amendment rights of the anonymous speaker outweighed the interests of the plaintiff nonetheless).  Here, in contrast, the anonymous speaker is not alleged to have said anything that it unlawful on its face;  indeed, even the representation in the posts that the speaker worked (or works) for Rightsize may be true as Mackie may not have been  responsible for the posts.  In other words, the possibility that a nonparty whose speech was in no way wrongful or unlawful might lose his or her First Amendment protection was not at issue in *Highfields*.

On the other hand, the subpoena in *2TheMart.com* sought identifying information as to anonymous speakers who clearly were *not* parties to the action; rather, as discussed above, the anonymous speakers were witnesses whose testimony might support of one of the defendants' defenses.  140 F. Supp. 2d at 1089-90.   Because the speakers were not parties, the court reasoned, their identities were "not needed to allow the litigation to proceed." *Id*. at 1097.   Thus, the facts of *2TheMart* also are not entirely on point because in this case, the anonymous speaker *might* be a party to this action (if it is Mackie).

While neither case is directly on point, the circumstances here implicate considerations of both *Highfields* and *2TheMart.com* and therefore, the Court draws on both in determining whether Awtry's subpoena should be enforced.  First, although *Highfields* focused on whether allegedly unlawful speech by an anonymous speaker warranted abridging the anonymous speaker's First

United States District Court
Northern District of California

United States District Court
Northern District of California

Amendment rights to allow a potential *plaintiff* to assert a claim against that speaker, the Ninth Circuit has recognized – at least implicitly – that the First Amendment rights of a plaintiff may also give way to the need to give the defendant "a fair opportunity to defend itself in court."  *In re Anonymous Online Speakers*, 661 F.3d at 1175 (citing *Lefkoe v. Jos. Bank Clothiers, Inc.*, 557 F.3d 240 (4th Cir. 2009)). To the extent that the identifying information sought in Awtry's subpoena may reveal that the Reviews were posted by Mackie, who is a party to the Illinois litigation, the analysis in *Highfields* offers a helpful framework for addressing whether Awtry's subpoena should be enforced.

At the same time, the Court must factor into its analysis the possibility that the Reviews were *not* posted by Mackie, but rather, by individuals whose speech was neither unlawful nor even relevant to the Illinois Action in any way, implicating the serious First Amendment concerns that were at issue in *2TheMart.com*.  Therefore, the Court pays particular heed to the question of whether there is a "real evidentiary basis" for concluding that Mackie is the source of the anonymous reviews in applying the *Highfields* test.  In addition, in conducting the balancing of First Amendment considerations against Awtry's interests in the Illinois Action, the Court takes into account the possibility that Mackie is not the author of the Reviews, looking to the factors articulated in *2TheMart.com* for guidance.

### 2. *"Real Evidentiary Basis"*

In *Highfields*, the court asked whether there was a "real evidentiary basis for believing that the defendant ha[d] engaged in wrongful conduct that ha[d] caused real harm to the interests of the plaintiff that the laws plaintiff has invoked were intended to protect."  *Id*.  Here, the Court modifies this requirement, drawing in part on *2The Mart.com*, to ask whether there is a real evidentiary basis for believing that the anonymous speakers engaged in wrongful conduct that is material to a legitimate defense in the Illinois Action.  This question can be broken down into two inquiries.  First, is there a real evidentiary basis for believing that the Reviews were written by Mackie; and second, if Mackie did write these reviews, is there a real evidentiary basis for concluding that they are material to the defense Awtry seeks to assert to the defamation claim in the Illinois Action.

United States District Court
Northern District of California

1    Starting with the second question, the Court is not persuaded by Glassdoor's argument that

2  the anonymous reviews are not material to Awtry's truth defense because they have no bearing on

3  whether she is *professionally* dishonest.  It is true that the defamation claim alleges that the

4  statement that she was a "liar" conveyed the false impression that she was professionally

5  dishonest.  The Court does not find any basis, however, for drawing a distinction between

6  professional dishonesty and dishonesty in general for the purposes of determining whether the

7  anonymous reviews -- if they are by Mackie-- would support Awtry's truth defense.  Nor has

8  Glassdoor pointed to any authority that suggests that such a distinction would be appropriate under

9  Illinois law.

10    Nonetheless, the Court concludes that the "real evidentiary basis" requirement has not been

11  met because, with respect to the first question -- whether Awtry has a real evidentiary basis for

12  believing that the anonymous reviews are by Mackie – the reasons he has offered are entirely

13  speculative.  First, Awtry's reliance on the timing of the posts is unpersuasive.  In particular, he

14  has offered no explanation (much less evidence) for his assertion that the reviews likely were

15  posted by Mackie because the dates of the reviews correspond to dates in which Awtry had their

16  son with him or in which events in their custody case occurred.  Nor is there any logical reason

17  why either of these correlations would tend to support the conclusion that Mackie posted the

18  reviews.

19    Similarly, Awtry's reliance on the fact that two of the posts state that the reviewer is an

20  interior designer is misplaced as Rightsize is a company that specializes in office interior design

21  and presumably employs numerous interior designers.  Although it is true that Mackie is an

22  interior designer, so too are many of the current and former employees of Rightsize.  The fact that

23  two Rightsize reviewers identified themselves as such does not offer a sound basis for concluding

24  that these reviews were posted by Mackie or even render that possibility more likely to any

25  meaningful degree.

26    Awtry's third argument, in which he states that the Glassdoor Reviews are similar to the

27  alleged defamatory posts by Mr. Awtry in the underlying litigation, also has no merit.  While there

28  may be some similarity between Awtry's alleged conduct and Mackie's conduct *if* the reviews

23

United States District Court
Northern District of California

posted on glassdoor.com were, indeed, written by Mackie, that similarity does not increase the likelihood that Mackie did, in fact, write them.  Under this logic, the criticisms of Rightsize in several subsequent reviews posted on glassdoor.com would indicate that Mackie was likely the author of those reviews as well. *See, e.g.* O'Brien Decl., Ex. A, January 26, 2016 review ("hostile workplace, owners that are completely manic, egotistical and ruthless"); January 12, 2016 review ("Poor management"); December 15, 2015 review ("The CEO is incredibly sleazy, unprofessional, and will swear at you and treat you worse than a piece of dirt").  Awtry does not seek identifying information relating to any of these reviewers, however, and apparently does not suspect that Mackie wrote any of them.   In short, the Court finds nothing about the content of the Glassdoor Reviews that lends support to the conclusion that they were more likely than not posted by Mackie as opposed to an actual employee (current or former) of Rightsize.

Finally, while Glassdoor's investigation of the identities of the anonymous reviewers is not conclusive, the fact that the email addresses associated with the posts included names of individuals who had online profiles listing their employment at Rightsize suggests that it is unlikely, at best, that the Reviews were posted by Mackie.  Awtry has not attempted to rebut this evidence; nor has he pointed to any evidence whatsoever that would suggest Mackie might have not only falsely posed as a Rightsize employee in the Glasssdoor Reviews but also used a fictitious email address and/or created fake online profiles to hide the truth.

Therefore, the Court finds that Awtry does not have a real evidentiary basis for suspecting that Mackie was the author of the anonymous Glassdoor Reviews.  Instead, the justifications Awtry offers for his suspicions are flimsy and unpersuasive.  For this reason alone, the subpoena should not be enforced.

### 3.  Balancing of First Amendment Concerns and Awtry's Interest in Asserting a Truth Defense Against the Defamation Claim in the Illinois Action

Even assuming that Awtry has demonstrated that there is a real evidentiary basis for believing that the anonymous Reviews were posted by Mackie, the balancing of First Amendment concerns against Awtry's interests in obtaining the identifying information he seeks also points away from enforcing the subpoena.

United States District Court
Northern District of California

1    Taking into account the context of Awtry's request, the First Amendment implications of

2    the disclosure he seeks are considerable.  The critical speech in the Glassdoor Reviews is,

3    undisputedly, protected by the First Amendment.  *See Art of Living Foundation*, No. 10-CV-

4    05022-LHK, 2011 WL 5444622, at *6 (N.D. Cal. Nov. 9, 2011).  Further, there is a significant

5    likelihood that ordering disclosure of the identities of the reviewers who posted the Glassdoor

6    Reviews will result in a substantial chilling effect because of the weak showing that Awtry has

7    made linking the Reviews to Mackie.  Even if it turns out that the Reviews *were* posted by

8    Mackie, if courts are willing to enforce subpoenas like Awtry's based on what amounts to

9    speculation that the anonymous reviewer is only *posing* as a current or former employee,

10    individuals who are in fact current or former employees are likely to be reluctant to post the

11    candid reviews that Glassdoor tries to offer its users. Moreover, contrary to Awtry's assertions, the

12    Privacy Policy posted on Glassdoor.com would not lead users to expect that identifying

13    information about them will simply be handed over when requested in litigation.  Rather,

14    Glassdoor clearly states that its typical practice is to require a court order before it will reveal the

15    identities of those posting reviews.

16    The expectation that the identities of reviewers will remain anonymous can also be inferred

17    from the obvious sensitivity of that information.  Here for example, one of the Reviews (the July 8

18    Review, describing the company as "Worst Ever" and complaining about the "[h]orrible

19    micromanaging management" by "two brothers that think they rule the earth") is posted by an

20    individual who is described as a current employee of Rightsize. It is highly unlikely that the

21    individual who posted that review – assuming it turns out not to be Mackie – would have done so

22    had she believed there was a possibility her identity would be disclosed to the CEO whose

23    micromanagement she disparaged in her Review.  Nor is it likely that her concerns would be

24    alleviated by Awtry's assurances that he is only seeking the information in order to pursue a

25    defense in the Illinois Action and not to pursue a defamation claim against his (previously)

26    anonymous employee.   The chilling effect arises from the negative consequences (whatever they

27    might be) to the anonymous speaker that could flow from the disclosure of that individual's

28    identity, regardless of the stated purposes for which Awtry is seeking the information in the

United States District Court
Northern District of California

1   Illinois Action.

2       It is true that in some circumstances, the potential harm that may arise from disclosure –

3   and by extension, the chilling effect that may result – may be minimized through use of a

4   protective order.  Thus, for example, in *Signature Mgmt. Team, LLC v. Automattic, Inc.,* the

5   undersigned ordered that the identity of an alleged copyright infringer be disclosed on the

6   condition that the information would be used by the plaintiff solely for the purposes of protecting

7   its copyright and would not be disclosed to anyone except the parties to the action and their

8   counsel. 941 F. Supp. 2d 1145, 1157 (N.D. Cal. 2013).  The court reasoned that the anonymous

9   speaker who was alleged to have infringed the plaintiff's copyright would "suffer only minimal

10  harm" with these protections in place and that the plaintiff's interest in pursuing its copyright

11  claim therefore outweighed the First Amendment concerns.  *Id*.  The circumstances here differ

12  from those in *Signature Management Team*, however, because the anonymous speakers who

13  posted the Glassdoor Reviews may not parties to the Illinois Action and the Reviews themselves

14  are not unlawful on their face.  As a result, the facts here implicate more serious First Amendment

15  concerns than were at issue in *Signature Management Team*.   Further, it is unclear that a

16  protective order limiting the requested information to Awtry or to his counsel would be sufficient

17  to avoid the chilling effect discussed above, given that the individual to whom anonymous

18  reviewers of Rightsize (especially current employees) would *most* likely want to prevent

19  disclosure is the owner of Rightsize, namely, Awtry.

20      Awtry also fails to demonstrate that the information he seeks in his subpoena relates to a

21  core defense in the Illinois Action. *See 2TheMart.com*, 140 F. Supp. 2d at 1096 ("Only when the

22  identifying information is needed to advance core claims or defenses can it be sufficiently material

23  to compromise First Amendment rights"). As in *2TheMart.com*, where court found that the

24  information that was requested related to only one of 27 affirmative defenses and did not go to the

25  "heart of the matter," Awtry's truth defense relates to only one of many claims being asserted

26  against him in the Illinois Action.  Further, the conduct upon which many of those other claims are

27  based includes the allegedly defamatory statements about Mackie but goes far beyond those

28  statements. *See, e.g.,* SAC ¶¶ 121-134 (Lanham Act claim); ¶¶ 150-170 (Illinois Uniform

26

Deceptive Trade Fair Practices Act claim).  To the extent that the truth of the allegedly defamatory statement is not a defense to these claims (which remain in the Illinois Action despite a pending motion to dismiss challenging some of them), the information sought by Awtry in the subpoena may have little bearing on the outcome of the case as a practical matter.

Moreover, it is not clear that the evidence Awtry seeks (assuming the posts were, in fact, by Mackie) would be sufficient to show that the allegedly defamatory statement calling Mackie a liar was true when it was made.  A handful of fake Internet posts may or may not be sufficient to show that a person is a "liar."  The fact that the Glassdoor posts occurred almost a year after Awtry allegedly called Mackie a liar also appears to diminish the significance of this evidence for proving Awtry's truth defense.  In short, the Court concludes that the information Awtry seeks in his subpoena does not relate to a "core" defense in the action. This factor therefore points away from ordering disclosure.

The Court also finds that Awtry has not made an adequate showing that the information he seeks in the subpoena is necessary to permit him to assert his "truth" defense to the defamation claim.  As was recognized in *2TheMart.com*, it is appropriate that before the Court orders enforcement of a subpoena that may compromise the First Amendment rights of anonymous speakers, Awtry must demonstrate that he has made reasonable efforts to obtain the information he needs from other sources.  *See 2TheMart.com*, 140 F. Supp. 2d at 1097.   Awtry has not met this burden. To the contrary, Awtry misleadingly states in his brief that he has been unable to depose Mackie or propound written discovery relating to the Glassdoor Reviews because of a stay in the Illinois Action. See Reply at 8.  The May 7, 2015 Minute entry in the Illinois Act, of which the Court takes judicial notice, see Frimel Objection Decl., Ex. B, indicates that this statement is untrue and that Awtry has been free to pursue discovery on the defamation claim for many months.  Had he done so, it is possible he might have obtained evidence supporting his defense that Mackie is a liar - either by showing that she posted the Glassdoor Reviews or by some other means. The Court also rejects Awtry's suggestion that he should be excused from attempting to use the ordinary mechanisms of discovery because he believes Mackie is a liar and therefore, that she (and implicitly, her counsel as well) will not respond truthfully to Awtry's discovery. *See*

Reply at 8.  Awtry's apparent failure to conduct any meaningful discovery to learn whether Mackie was the author of the Glassdoor Reviews or more generally, to discover evidence that might supports his truth defense, weighs in favor of denial of the Motion.

Weighing the First Amendment implications of ordering disclosure of the identifying information sought in the subpoena against Awtry's interest in obtaining that information, the Court concludes that the former significantly outweigh the latter.[7]

## IV.  CONCLUSION

For the reasons stated above, the Motion is DENIED.


Dated: April 1, 2016


_____
JOSEPH C. SPERO
Chief Magistrate Judge

---

[7] Glassdoor does not assert that the subpoena was issued in bad faith.  Nor does the Court question Awtry's motives in seeking to enforce the subpoena.  The fact that Awtry's Motion to enforce the subpoena was brought in good faith, however, is not a sufficient basis to grant that motion given the First Amendment concerns discussed above.  *See 2TheMart.com*, 140 F. Supp. 2d at 1095-96.

28